STATE *ex rel.* GEORGE F. GODBY

*v.*

C. C. CHAMBERS, JUDGE OF THE CIRCUIT COURT OF LOGAN COUNTY, *etc., et al.*

(No. 9933)

Submitted March 4, 1947.   Decided April 11, 1947.

*Mark T. Valentine,* for relator.

*Chauncey Browning,* for respondents.

KENNA, JUDGE:

The petition in this original proceeding of prohibition brought by George F. Godby against Honorable C. C. Chambers, Judge of the Circuit Court of Logan County, and Clark Bell, administrator of the estate of Carlos Gene Bell, deceased, alleges that the petitioner is a resident of Cabell County and that on July 21, 1946, while operating his automobile in Logan County he struck Carlos Gene Bell who later died as the result of the injuries received; that petitioner was immediately placed in the county jail of Logan County and that on the 22d day of July, 1946, a warrant charging reckless driving was served; that when petitioner appeared on the 27th day of July in response to an appearance bond that he had given and while in Logan County for that purpose only, Carlos Gene Bell having in the meantime died, a warrant charging manslaughter was served on him; that he waived hearing and gave a bond in the penalty of $1,000.00 for his appearance before the Circuit Court of Logan County to answer an indictment that might be returned against him and that on the 9th day of September, 1946, he was indicted for manslaughter and on the 13th day of September he appeared pursuant to his bond and entered a plea of *nolo contendere* to involuntary manslaughter and was ordered to appear at a later date to be sentenced, and that on the 30th day of October, 1946, he did appear and was sentenced to serve four months in the Logan County jail and fined the sum of $200.00; that his sentence immediately began and that he served the sentence, being discharged on the 3d day of February, 1947; that on the 13th day of November, 1946, an action of death by wrongful act was instituted by Clark Bell, Administrator, etc., and that on the same day a summons in said action was served upon petitioner while incarcerated in the Logan County jail pursuant to the sentence of the Circuit Court of Logan County; that except for the two periods July 21, 1946, to July 22, 1946, and October 30, 1946, to February 3, 1947, the petitioner has at all times been in Cabell County and not in Logan County except to answer a bond and serve the

sentence that was imposed. The petition goes on to allege that on the first Monday in January, 1947, at January Rules, the petitioner filed his verified plea in abatement alleging the facts recited above and denying that the Circuit Court of Logan County had obtained jurisdiction of his person in the action for death by wrongful act then pending wherein Clark Bell, Administrator, is plaintiff, and petitioner is defendant, by virtue of the service of a summons so obtained upon him, the petitioner. To that plea Clark Bell, Administrator, etc., filed his demurrer in writing contending the petitioner was not immune to the service of process; and that on the 7th day of February the petitioner, appearing only for that purpose, joined in the demurrer, and that on the 14th day of February, 1947, the Judge of the Circuit Court of Logan County sustained the demurrer and declined to certify to this Court the questions of law so arising and set the action for trial on the 20th day of February, 1947. Therefore this petition.

There is a question involving whether the petition before this Court presents a matter appearing of record in the Circuit Court of Logan County. The petition alleges the filing by the petitioner of a plea in abatement challenging that court's jurisdiction of the person of the defendant, Godby. That jurisdiction of course rested upon the validity of the summons and of its service upon the defendant. The plea in abatement, resting as it does upon immunity, partakes of the nature of a plea by way of confession and avoidance, its function being to introduce into the record new matter until then extraneous of the record, for the purpose of attacking a record showing made by the otherwise valid return. Here the petition fails to allege that the process under attack was made a part of the record. That could have been done in an action at law only by craving oyer of the writ and return. *Lambert* v. *Ensign Mfg. Co.*, 42 W. Va. 813, Point 4, Syllabus, 26 S. E. 431; *Snyder* v. *Philadelphia Company*, 54 W. Va. 149, 46 S. E. 366; *Pancake* v. *Hite*, 105 W. Va. 366, 368, 142 S. E. 518; *Netter-Oppenhemier & Company* v. *Elfant*, 63 W. Va. 99,

102, 59 S. E. 892, and *McKinley* v. *Queen,* 125 W. Va. 619, 622, 25 S. E. 2d 763. We believe that it is a matter of very serious doubt whether the question attempted to be presented here by the petition appears properly upon the record of the Circuit Court of Logan County because the process under attack did not appear upon that court's record. In the absence of an allegation to the contrary the presumption here is that the state of the record, i.e., the absence therefrom of the process under attack, would sustain the ruling of the trial court. However, since the point is not specifically raised by demurrer to the petition or otherwise, we do not regard it as necessary to consider it now, and comment only in order that we may not be understood as approving the absence of oyer in treating process under attack as a part of the record.

That prohibition lies to test the question of jurisdiction over the person of a defendant in a personal action has been settled in this jurisdiction by the cases of *Lang, et al.* v. *Shaw, Judge,* 113 W. Va. 628, 169 S. E. 444, *Wolfe* v. *Shaw, Judge,* 113 W. Va. 735, 169 S. E. 325, and *Morris* v. *Calhoun, Judge,* 119 W. Va. 603, 195 S. E. 341, the latter case definitely holding that upon an original proceeding in prohibition in this Court it is not necessary that the questions involved shall have first been passed upon by the trial court.

In the case of *Whited* v. *Phillips,* 98 W. Va. 204, 126 S. E. 916, Judge Hatcher, speaking for this Court, gives an accurate historical resume of the development of the immunity rule, referring to the fact that its origin was based solely upon the untrammeled functioning of the courts, and to see that the fear of litigation would neither hamper nor obstruct the person served with their process from attending at the time and place named therein.

The immunity rule is somewhat broader in the Federal courts than in the state courts, in the latter the weight of authority being to the effect that persons accused of crime are not protected by the immunity rule from the service of process while in attendance upon a court pursuant to com-

pulsory process, as under indictment, while the Federal cases apply the immunity rule to criminal process. The distinction between civil and criminal process under the rule apparently rests upon the fact that the former is treated as requiring only a voluntary compliance, while the latter is compulsory. Most of the cases that sustain this distinction are cases where the jurisdictions involved were those of different states, so that the civil process of one state was not effective in the other. Therefore, the reasoning would seem not to have application as between different counties of the same state under circumstances where the civil, as well as the criminal, process would be accompanied by ultimate compulsion if necessary. However, it is unnecessary to discuss in detail the question of whether the immunity rule applies to criminal process in this jurisdiction because by both *Lang, et al.* v. *Shaw, Judge*, 113 W. Va. 628, 169 S. E. 444, and *Morris* v. *Calhoun, Judge*, 119 W. Va. 603, 195 S. E. 341, this Court is definitely committed to the minority holding to the effect that a person while attending court pursuant to criminal process is immune to the service of process in other litigation and that the service of process upon him while in attendance or within a reasonable period required to go to and from the place of attendance is voidable. This is true whether the defendant is from a different state or a different county.

The question in this case then is whether a person serving a sentence for a misdemeanor is incarcerated by virtue of the process of the court imposing sentence so that under those circumstances the reasons underlying the immunity rule apply. The statement contained in the *Whited* opinion to the effect that the immunity rule originated from the necessity of seeing that judicial proceedings did not operate at cross purposes to the extent that the likelihood of litigation in one court would hamper its progress in another, or that justice, so to speak, would "scotch" its own wheel, we believe to be correct. The further statement that the courts later recognized as an additional reason the right of the individual involved not

to be subjected to harassment, interference, and to the distress of worrying about other litigation when on trial for his liberty or life, is also correct.

We find neither of the reasons for the immunity rule exists after conviction and sentence. Certainly the defendant's worries about conviction or its possibilities, his fight for his liberty or for his life, have then been concluded. Process could not be then a reason for distracting his attention or for preventing him from concentrating upon his defense to a criminal charge. That time has passed. Neither is it a time when there is question about the obedience to the court's process.

Within the meaning of the immunity rule, after sentence the time for the court's process has been concluded by its final judgment. True, following sentence it is customary for the clerk in attendance to sign a paper or memorandum called a "temporary commitment" stating the date and length of the sentence and amount of any fine imposed. This, along with the prisoner, in open court is delivered to the jailer who is required by Code, 7-8-4, to attend sessions of the court. We believe that a paper of that kind under the provisions of Code, 56-3-5, is not to be regarded as process, certainly not under the immunity rule.

Certainly a sentence cannot be viewed nor treated under the immunity rule as being merely the process of the court that imposes that judgment. The parties litigant whose interests are at stake can to a large extent command the issuance of the courts' process, such as warrants, summonses, etc., as illustrated by the cases in which its abusive use has been attempted, but an entered sentence or final judgment is the act of the court beyond the control of the parties concerned. It is agreed by all authorities that incarceration of itself does not make the person in prison immune from the service of process. If the court from which the process issues otherwise has jurisdiction of the person, by virtue of his residing within its jurisdiction, for example, it retains that jurisdiction in spite of

imprisonment and its process can be served in the place of confinement. We therefore conclude that a judgment sentencing to imprisonment is not process under the immunity rule because the reasons underlying and sustaining that rule have ceased to exist. To hold that the defendant is then subject to the service of process we believe in no conceivable way can hinder the administration of justice nor can it serve to divert the accused's mind from his defense, thus possibly interfering with his right to a fair trial, due to the fact that his guilt then is a settled question. We therefore hold that the immunity rule does not apply to a person serving a sentence for misdemeanor and that the service of process upon him while in the county jail for that reason is good service.

Having held that prohibition is a proper remedy, we think that it is not necessary to discuss whether a general appearance would waive the questions raised by the defendant's plea in abatement or those questions could be saved and thereafter presented upon writ of error.

We have not discussed the question of the condemned use of criminal process as a ruse for the purpose of gaining jurisdiction of the person of an accused because, in our opinion, within the meaning of the immunity rule there is no process to be considered in this case.

Therefore the writ of prohibition is refused.

*Writ refused.*