61 S.E.2d 305 (1950)
FISHER
v.
BOUCHELLE, Judge.
No. 10260.
Supreme Court of Appeals of West Virginia.
Submitted April 12, 1950.
Decided May 2, 1950.
Dissenting Opinion October 9, 1950.
Jackson, Kelly, Morrison & Moxley, W. T. O'Farrell, and W. J. Carter, all of Charleston, for petitioner.
Hillis Townsend, Joseph Thomas, Charleston, for respondent.
FOX, Judge.
On September 14, 1949, Shirley Harrison, administrator of the estate of Biddie May Harrison, instituted an action at law against *306 Milford G. Fisher and Mrs. Walter Hammack, in the Circuit Court of Kanawha County, seeking a recovery of damages on account of the death of Biddie May Harrison, allegedly the result of negligence on the part of Fisher in the operation of an automobile by the said Fisher, while acting as the agent and servant of the owner Hammack. On or about the same date, a warrant for the arrest of the said Fisher was issued and served, on a charge of manslaughter, growing out of the alleged negligent operation of the said automobile. Process in such civil action was executed on the said Fisher in the courtroom of the Municipal Court of the City of Charleston while he was in attendance on said court where a preliminary hearing on the charge of manslaughter lodged against him was to be then had.
The declaration in said law action was filed in said Circuit Court at October Rules, 1949. At November Rules, 1949, Fisher, who will be hereafter designated as petitioner, filed his plea in abatement, duly verified, setting up the fact that process in said action had been served on him while he was appearing in the Municipal Court of the City of Charleston pursuant to an order of that court and subject to a preliminary hearing on the charge of manslaughter aforesaid, which plea craved judgment of the writ and return, and prayed that the same be quashed on the ground that the said service was void. A demurrer to said plea was entered by the plaintiff in said action on November 30, 1949; and on February 16, 1950, an order was entered by the Circuit Court of Kanawha County sustaining the demurrer aforesaid, on the ground that the rule of immunity from service of civil process under the circumstances set up in said plea in abatement should be applied, under present day conditions, only when the immunity is sought by a defendant who is a nonresident of the State, or a nonresident of the county wherein the action is brought. Whereupon, petitioner applied to this Court for a writ of prohibition inhibiting the respondent from further proceeding against the said petitioner on the basis of the allegedly void service of process attempted to be made upon him. On March 6, 1950, we awarded a rule returnable on April 11, following, to show cause why the writ should not be awarded. There was no general appearance in the trial court by the petitioner, such appearances made by special appearances for the filing of the plea in abatement aforesaid.
Code, 53-1-1 provides that: "The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."
While the writ will not be awarded in cases where it does not clearly appear that the petitioner is entitled thereto, it goes as a matter of right in cases where a clear showing is made either of the absence of jurisdiction to hear the case, or where the legitimate powers of a trial court are exceeded. Another rule is that a writ of prohibition will not be permitted to be substituted for a writ of error or appeal. In this case, no question is raised as to the propriety of the form of the remedy chosen by the petitioner, and the cases of Morris v. Calhoun, 119 W.Va. 603, 195 S.E. 341, and White Sulphur Springs, Inc. v. Ripley, 124 W.Va. 486, 20 S.E.2d 794, would seem to justify the use of the writ in this case. This being true, it is quite clear that the sole question presented in this proceeding is whether the defendant in a civil action is immune from service of a civil process in the county of his residence while attending court as a litigant.
The claimed right to such immunity is based upon a long existing rule, both in England and in this country, that courts will not permit their proceedings to be disturbed by the arrest in a civil case of attorneys, litigants and witnesses. Such immunity was established in the early days in England, has been treated in this country as a part of the common law, and unless restricted by statute, is in force in this State under the provisions of Article VIII, Section 21, of our Constitution. When we examine the English cases, we find that such immunity was against arrests in civil proceedings, and was enforced under the *307 peculiar conditions which existed in England, one being that the writs of the courts ran throughout the Kingdom, and no question of venue ever arose. The rule was followed in Virginia in the case of Commonwealth v. Ronald, 1786, 4 Call. 97, 98. It was there held that: "Judges, attornies, witnesses, and suitors are exempt from arrest in civil suits during their attendance at court." And in Richards v. Goodson, 1823, 2 Va.Cas. 381, it was held: "A suitor is privileged from arrest by a Ca. Sa. whilst he is attending Court in his own cause; and eundo et redeundo."
While the early cases in England and in Virginia seem to provide immuity against arrest, there does not seem to have been at that time any such immunity from the service of an ordinary civil process.
We gather from those cases that an arrest of a creditor was the usual step taken to collect a debt, presumably on account of limitations then existing on the right to subject real and personal property to the payment of debts, particularly real estate. All of this has been changed, and now, except in cases provided by Article 7 of Chapter 53 of the Code, arrests in civil cases are not permitted in this State. The extention of the principle of immuity from service of civil process in certain cases seems to have been of comparatively recent development. In Whited v. Phillips, 98 W.Va. 204, 126 S.E. 916, 917, 40 A.L. R. 83, this Court, in the body of the opinion, said: "Anciently, it would seem, as well as in some of the earlier cases in the states, this rule was limited to exemption of a defendant from arrest, rather than from service of a civil process which did not involve arrest. But, as years went by, the rule was enlarged so as to afford full protection to suitors, witnesses, and court officials, from all forms of process, whether in civil or criminal cases. The reasons for the rule have also been enlarged. It is now regarded as the privileges of persons attending court in their several capacities as well as the privilege of the court. * * *"
That such immunity does now exist against service of civil process in certain cases is well established by the Whited case, supra, and by Lang et al. v. Shaw, Judge, etc., 113 W.Va. 628, 169 S.E. 444, wherein it was held: "A party who is charged with a criminal offense in a county other than that in which he resides, and who was released on his own personal recognizance, and who, in pursuance thereof, appears and answers to the charge on the day set for trial, is not liable to be served in such county with process in a civil action until after a reasonable time has elapsed to enable him to return home."
See also Morris v. Calhoun, Judge, 119 W.Va. 603, 195 S.E. 341, 343, where we held: "A defendant in a civil action cannot be legally served with process therein in a county other than that of his legal residence, when in such county in obedience to legal process or its equivalent; and while in such county, in obedience to a citation of a member of the Department of Public Safety to answer a criminal charge, may not be served with such process so long as the necessity for his presence to answer such charge continues, and a reasonable time thereafter."
Under the ruling in these cases, it is clear that a nonresident of the county, in which he is required to appear in court, may not be served with process in a civil action in that county while in attendance on such court, and for such reasonable time thereafter as will permit him to return to the county of his residence.
This leaves open the question of whether such immunity exists where a person is required to attend court in the county of his residence. As indicated above, in England process issued from a court whose writs ran throughout the Kingdom, and the question of venue was never presented. In this country a different situation exists. First, because of the federal union of sovereign states, and the limitation of the jurisdiction of the courts of the several states to their own boundaries; and second, because in this State certain statutory rules govern the venue of all suits and actions as clearly set out in Code, 56-1-1 and 2, providing that an action may be brought against a natural person in the county of *308 his residence, or in the county in which the cause of action arose; but in the latter instance, the defendant, or if more than one defendant, one or more defendants, shall be served with process or notice commencing such action, suit or proceeding, in the county where the cause of action arose. In the case at bar, it is quite clear that if petitioner had been a resident of some county other than Kanawha, the county in which the cause of action arose, and was compelled to appear to answer a criminal action in Kanawha County, or even as a witness in a civil case, he would be immune from the service of civil process while in attendance on court. But in this case, admittedly, petitioner was a resident of Kanawha County, the county in which the cause of action arose.
We are impressed with the view that in no case decided by this Court has it ever been held or intimated that the immunity exists in favor of a defendant in a civil action where he is served with process in the county of his residence. It will be noted in the Lang case, supra, that the holding is based on a situation where there is "A party who is charged with a criminal offense in a county other than that in which he resides * * *." In the Morris case, supra, it was held "A defendant in a civil action cannot be legally served with process therein in a county other than that of his legal residence". This indicates to us that this Court has never considered the immunity as existing where the service of process could be had in the county in which the defendant resided. Another reason in support of this view is the fact that under our statutes personal service of process or notice is not necessary as other methods of securing service of process on which a personal judgment or decree may be obtained are provided for. Code, 56-2-1 and Code, 56-3-12. No one, we think, would contend that service of process could not have been had on petitioner by delivering the process at his usual place of abode, or by posting at his usual place of abode, by the methods provided by statute; nor do we think it will be contended that process could not have been served on the petitioner in this case in the county of his residence at any time after he left the presence of the Municipal Court of the City of Charleston. The rule favoring immunity, as now established in this State, being a development and expansion of the ancient rule against arrest in civil cases, should not be interpreted to protect a defendant in his own county from the service of civil process. The rule as it was originally followed in England, and to some extent in this country, and which should ordinarily be applied at this date in a proper case, was a rule against arrest in civil cases, which naturally tended to interfere with the processes of the courts, and obstruct justice, whereas the service of civil process cannot be said to have that effect. The rule should be reasonably adjusted to conform to modern practices and usages, and we are unable to see how the processes of courts, as they are now operated, are interfered with, or the administration of justice obstructed by the service of process in a civil case on a resident of the county in which the court is sitting. The rule of immunity which protects defendants from service of civil process while attending courts as litigant or witness should be applied to those cases where, but for the requirement of attendance on court the defendant, a nonresident, would not be required to come into the State, or a defendant residing in another county would not be required to come into the county where the cause of action arose, and thereby be able to avoid the service of process in the county in which the cause of action arose.
In State ex rel. Godby v. Chambers, Judge, 130 W.Va. 115, 42 S.E.2d 255, we held that a person brought in from another county and placed in jail was not immume from the service of civil process while serving a term of imprisonment, but it was stated in that case that the reasons for the immunity rule did not apply after conviction and sentence.
The views we express are, in our opinion, sustained by general authority. In 50 C.J. 551, it is stated: "In the absence of statute otherwise providing, witnesses and suitors attending court in counties of their residence are not entitled to immunity from service of civil process."
*309 In the case of Case v. Rovabacher, 1867, 15 Mich. 537, it was held: "There is no general exemption from the service of process without arrest, merely because a party is attending court awaiting the trial of a case."
The question is discussed at length in 42 Am.Jur. 115-135, Process, Sections 135 to 156, both inclusive. As we view it, the entire discussion is apparently based upon situations where attorneys, witnesses and litigants are brought into court from another county or from another state. Nowhere in that discussion is there an intimation that the immunity exists where the process is served in the county of a defendant's residence. Apparently it has not been considered that such immunity could exist where a defendant is served with a civil process in the county of his residence, and we are not disposed to extend the immunity to cover such cases. In our opinion, a defendant is always subject to service of a civil process in the county of his residence, where the cause of action arises in that county as in the case at bar.
For the foregoing reasons, we are of the opinion to deny the writ. Writ denied.
HAYMOND, Judge (dissenting).
Because the decision in this case entirely ignores the reasons which gave rise to the rule granting immunity from service of criminal and civil process to litigants, witnesses and other persons, while attending court, and completely overlooks and disregards its historical growth and development, I respectfully dissent.
In Whited v. Phillips, 98 W.Va. 204, 126 S.E. 916, 918, 40 A.L.R. 83, the rule is referred to as "a principle established by the common law of England, by the early courts of Virginia (whose decisions are binding upon us), and upheld by principles of right and justice." In discussing the scope of the rule, the reasons upon which it is based, and its historical development, in the opinion in that case, this Court used this language:
"The rule that parties to judicial proceedings, as well as witnesses, and court officials, shall be immune from service of process while attending court, is of very ancient origin. Reference is found to it in the Year Books of England, as early as Henry VI. In its inception, its purpose seems to have been merely to prevent the interference in the administration of justice occasioned by the arrest (whether under criminal or civil process) of suitors, attorneys, witnesses, etc. The rule was originally asserted solely as the privilege of the court supporting its authority and dignity, in order that justice might be unfettered and free from outside interference. Its aim was to secure efficient and orderly trials which could not be had so long as the witnesses and court officials were subject to arrest or intimidation when attending court. As one authority expresses it, the rule was established "as good policy that a court should not be hampered by having those attending it pounced on by other litigants.'
"Anciently, it would seem, as well as in some of the earlier cases in the States, this rule was limited to exemption of a defendant from arrest, rather than from service of a civil process which did not involve arrest. But, as years went by, the rule was enlarged so as to afford full protection to suitors, witnesses and court officials, from all forms of process, whether in civil or criminal cases. The reasons for the rule have also been enlarged. It is now regarded as the privilege of persons attending court in their several capacities, as well as the privilege of the court. It is well said that if there is ever a time when a man should be relieved of all other concerns, and when he should be permitted to use unhampered his every faculty, it is when he is on trial under charge of a crime. Judicial reasoning also recognizes the right of a man, ordinarily, to be tried by a jury in the vicinity in which he resides, so that he may have such advantage and safeguard there as his conduct and character shall merit. An additional argument for the extension of the rule is that a person should not ordinarily be drawn into a foreign jurisdiction "and there be exposed to entanglements in litigation far from home, which *310 means he shall be attended with augmented expense.'"
As indicated in the foregoing quotation, the original purpose of the rule was to support the authority and the dignity of the courts in order that justice might be administered without interference from any outside source. In the early cases in England and in Virginia that consideration was emphasized and there was no indication that the application of the rule of immunity should be qualified or restricted to persons who were not residents of the jurisdiction in which service of process was had. See Hatch v. Blisset, 13 Ann., Gilb.Cas.K.B. 308, English Reports, Full Reprint, Vol. 93, p. 338 (decided during the reign of Queen Anne, 1702-1714); Lightfoot v. Cameron, 2 Black.W. 1113, English Reports, Full Reprint, Vol. 96, p. 658 (decided Michaelmas Term, 17 George III, 1776); Arding v. Flower, 8 Term Rep. 534, 3 Esp. 117, English Reports, Full Reprint, Vol. 101, p. 1531 (decided May 14, 1800); Ex parte Jackson, 15 Ves.Jun., 117, English Reports, Full Reprint, Vol. 33, p. 699 (decided May 21, 1808); Pitt v. Coomes, 5 B. & Ad. 1078, 3 N. & M. 212, English Reports, Full Reprint, Vol. 110, p. 1091 (decided Jan. 28, 1834); Commonwealth v. Ronald, 1786, 4 Call, Va. 97; Richards v. Goodson, 1823, 2 Va.Cas. 381. Long after the privilege had been established and recognized in favor of residents within the jurisdiction in which process was served, it was extended to a person who resided in another jurisdiction and had voluntarily come into the jurisdiction of an English court. In Walpole v. Alexander, 3 Dougl. 45, English Reports, Full Reprint, Vol. 99, p. 530 (decided February 1, 1782), the defendant came from France to England and was there arrested for a debt. The opinion of the English Court of King's Bench, delivered by Lord Mansfield, contains this language: "This is the first case of a witness coming from abroad who has required the protection of the Court. That protection is extended to witnesses coming from abroad, as well as to those who are resident in this country. Although in England a party may have the benefit of the evidence of a witness who has been arrested, by means of a habeas corpus ad testificandum, yet, in order to encourage witnesses to come forward voluntarily, they are privileged from arrest. This privilege protects them in coming, in staying, and in returning, provided they act bona fide, and without delay, which is a question of reasonableness. Every reason which applies to the protection of a witness at home, holds more strongly with regard to a witness who comes from abroad. * * * I am of opinion, that all the rules which apply to the protection of witnesses here, hold with regard to witnesses coming from abroad, and that the defendant must be discharged." (Emphasis supplied). The report of the case also states that "The protection afforded to witnesses is not on their own account, but for the purposes of justice." (Emphasis supplied).
From the foregoing quotations it is manifest that the privilege applied to residents; of the jurisdiction in which they were served with judicial process; that its purpose was not primarily the protection of the person served against hardship or inconvenience but the maintenance and the preservation of the dignity of the court and the integrity of judicial proceedings; and that long after the privilege had been firmly established and its application to those within the jurisdiction who were served with process had been widely recognized, it was "extended", by and as a result of the decision in the Walpole case to persons who were not residents of the jurisdiction in which they were served. The situation just outlined was the status of the privilege at common law as it existed when Article VIII of the Constitution of West Virginia became effective, and Section 21 of that article declares that "Such parts of the common law, and of the laws of this State as are in force when this article goes into operation, and are not repugnant thereto, shall be and continue the law of the State until altered or repealed by the Legislature." As no statute of this State deals with the immunity of a person from service of civil or criminal process while attending court, the character and the scope of the privilege which applied alike to persons residing *311 within as well as without the jurisdiction in which they were served remain the same as they were at common law when Article VIII of the Constitution was adopted. It is clear, therefore, that at common law and by virtue of the constitutional provision just referred to the petitioner, Fisher, was immune from service of process in a civil action against him while he was in the court room of the Municipal Court of the City of Charleston for the purpose of attending a preliminary hearing in that court of a charge of manslaughter against him.
The decisions of this Court in the cases of Whited v. Phillips, 98 W.Va. 204, 126 S.E. 916, 40 A.L.R. 83; Lang v. Shaw, 113 W.Va. 628, 169 S.E. 444, and Morris v. Calhoun, 119 W.Va. 603, 195 S.E. 341, cited and discussed in the majority opinion, recognize and uphold the common law rule of immunity from service of process of a person while attending court, and there is no pronouncement or statement in any of them which expressly or by necessary implication limits it to persons who are not residents, or denies its application to persons who are residents, of the jurisdiction in which they are served. In those cases the question of immunity from service of process of persons residing within the jurisdiction in which they were served was not presented or considered. In the Whited case the person served with process in a civil action in Roane County, West Virginia, was a resident of the District of Columbia who had voluntarily come into the jurisdiction of the circuit court of that county to answer an indictment in a criminal proceeding. In the Lang case and the Morris case the persons served were residents of counties in this State other than the particular county in which each of them was present to defend a criminal charge and was served with process in a civil action instituted in the county in which the process was executed. Those cases simply recognize the rule and apply it to nonresidents of the jurisdiction in which each of them was served with civil process. None of those cases sustains or justifies the holding of the majority in denying the application of the rule to persons who are residents in the jurisdiction in which the process is served.
In the light of the basic purpose of the rule of immunity from service of process of persons while attending court of protecting and maintaining the dignity and the power of the courts in the conduct of judicial proceedings, and from the standpoint of its historical scope and development at common law with respect to persons residing within the jurisdiction in which they were served, as indicated by English and Virginia cases to which I have referred, the decision of the court in this proceeding is legally unsound, logically and historically insupportable, and necessarily productive of strange and anomalous results. By restricting the application of the rule to persons who are not residents of the particular jurisdiction in which they are served and refusing to apply it to persons who are such residents, the present decision affords protection to the dignity of the court and against interference with the conduct of its proceedings with respect to persons in one group but effectively denies it with respect to persons in a different group. Such partial and incomplete protection is logically inconsistent and legally indefensible. The indignity to the court and the interference with its orderly and uninterrupted procedure are just as pronounced by the service of process upon a resident within its jurisdiction while present and attending its sessions as that which would result from the service of a nonresident in the same situation. In so far as disruption of judicial proceedings may or does result from service of process upon a person in attendance at court the place of residence of the person upon whom process is served is entirely unimportant. I am unaware of any method of service of process which may be applied alike to residents and nonresidents which would be more disruptive of judicial proceedings in one instance than in the other. If service of process, civil or criminal, be permitted upon any person while attending court, regardless of the place of his residence, the dignity of the court is offended and the orderliness of judicial proceedings is subjected to interference and disruption. The *312 privilege of immunity from service of process, if it is to be really effective and worthy of its continued existence, should be applied alike to all persons while attending court or it should be abolished and not applied to any of them. The strange, illogical, and historically unwarranted result of the present decision limiting the application of the immunity rule to nonresidents of the particular jurisdiction is that the residents of the jurisdiction in which process is served, who were the original beneficiaries of the rule, are denied its protection, and nonresidents, who after its establishment were merely afforded the same protection as residents, have now become its only beneficiaries.
An additional objectionable feature of the decision in this proceeding is that, contrary to the primary purpose of the rule as it existed at common law, which was not originally intended to be for the convenience or the benefit of the person upon whom process was served, the application of the rule as now restricted gives a nonresident of the particular jurisdiction an unmerited advantage over a person who resides within it. The rule, when applied to a nonresident, effectively prevents the institution of any civil proceeding against him in the jurisdiction in which he may be while attending court. In effect he cannot be sued except in the jurisdiction in which he resides. The local suitor who has a claim against him must follow him into the jurisdiction of his residence and there sue him or, for all practical purposes, abandon the claim. As to a person, however, who attends court in the jurisdiction in which he resides, and who by a proper application of the rule would be immune from service of process only during his presence and for a reasonable time after his attendance at court ends and may then be served, the rule, as now restricted, does not apply and he is subject to service of process while he is present in court even though he may at the time of such service be engaged in the actual trial of a case. In the one instance the prospective defendant is immune from service of process while at court and until, within a reasonable time, he leaves its jurisdiction, but in the other he can not get out of the courthouse or even off the witness stand without being subject to action at the hands of the process server. This presents a strange and unwarranted example of the discriminatory effect of the rule as now restricted and applied by this Court in favor of a nonresident of West Virginia and against a resident of any section of this State who is served with process in the jurisdiction in which he resides. Such a harsh and indefensible result is wholly foreign to any basic purpose of the rule and should not be possible of accomplishment in any instance. Conceding that the proper application of the rule affords greater protection to a nonresident in that he is permitted to escape service of process in a particular jurisdiction if he leaves it within a reasonable time after he has ceased his attendance at court than it gives to a resident of the jurisdiction who may be served in it when a reasonable time elapses after he has ceased to attend court, in all fairness and justice the rule should operate upon the nonresident and the resident alike while each of them is attending court and give to each the same immunity from service of process at and during that time.
It is also pertinent to remark that the restriction by the present decision of the application of the rule to a nonresident of the jurisdiction is entirely unnecessary in this instance, as there is no showing that the petitioner, Fisher, could not have been served in the jurisdiction of his residence with process in the civil action against him upon the expiration of a reasonable time after he had left the room of the municipal court. In the situation disclosed by the record it was not necessary to serve him with process while he was actually present at court.
I would recognize and apply the rule of immunity from service of process as it existed at common law and, in so doing, award a writ of prohibition in this proceeding.