71 S.E.2d 113 (1952)
STATE ex rel. SIVNKSTY
v.
DUFFIELD, Judge et al.
No. 10473.
Supreme Court of Appeals of West Virginia.
Submitted April 8, 1952.
Decided April 29, 1952.
Dissenting Opinion June 19, 1952.
John P. Malloy, Weston, Linn Mapel Brannon, Weston, for petitioner.
Paul H. Kidd, Glenville, for respondents.
RILEY, President.
On a rule heretofore issued Mike Sivnksty seeks a writ of prohibition against Honorable Charles A. Duffield, Judge of the Circuit Court of Gilmer County, and Johnny Bob DeVaughn, an infant, who sues by Bryan DeVaughn, his next friend, prohibiting further proceedings in an action of trespass on the case instituted in the Circuit Court of Gilmer County, wherein Johnny Bob DeVaughn, an infant, who sues by Bryan DeVaughn, his next friend, is plaintiff, and the petitioner, Mike Sivnksty, is defendant.
On June 30, 1951, within the corporate limits of the Town of Glenville, an automobile owned and operated by the petitioner struck two children, the respondent, Johnny Bob DeVaughn, an infant, and Alma Jean DeVaughn, an infant, who at that time were walking on State Route No. 33, injuring them. Shortly thereafter the petitioner was placed under arrest by a police officer of the Town of Glenville and incarcerated in the county jail of Gilmer County. Being unable to obtain bond, petitioner was held in jail until July 2, 1951, when he was taken to the office of the mayor of the town for trial at ten o'clock in the morning. Petitioner's counsel not being present at that time, he was returned to jail to await the trial of the case before the mayor in the afternoon. Between the time petitioner was brought before the mayor on July 2, 1951, at ten o'clock in the morning, and the time set for the trial of his case in the afternoon of that day, and while he was in the custody of the jailer, he was served with a civil process or summons issued by the Clerk of the Circuit Court of Gilmer County, commencing the action of trespass on the case sought to be prohibited, which action, as disclosed by the declaration therein, is for damages for personal injuries to the respondent, Johnny Bob DeVaughn, growing out of the happenings contained in the "reckless driving" charges, upon which petitioner had been arraigned before the mayor.
At the hearing in the afternoon of July 2d, the petitioner was found guilty and a judgment rendered imposing a fine of fifty dollars and the costs of the prosecution. Appeal having been had to the Circuit Court of Gilmer County, a verdict of guilty was returned by the jury. From the judgment and sentence rendered on the verdict of guilty in the criminal prosecution a petition *114 for a writ of error was filed on February 2, 1952, in the office of the Clerk of this Court, which writ of error was refused on February 25, 1952.
In the civil action petitioner appeared specially, and filed his plea in abatement, alleging that the circuit court was without jurisdiction of the action, for the reason that at the time petitioner was served with the process instituting the action, he was a nonresident of Gilmer County and a prisoner in the Gilmer County jail, having theretofore been arrested without warrant on June 30, 1951, as a consequence of the highway accident upon which plaintiff based the civil action.
The circuit court sustained a demurrer to the petitioner's plea in abatement, and set the action for trial on the trial docket at the March, 1952, term of court.
In this proceeding in prohibition a stipulation was filed, signed by counsel for the petitioner and the respondents, to the effect that the petitioner came into Gilmer County in the afternoon of June 30, 1951, with the intention of remaining in the county for a period to extend over the fourth of July holiday; that after his car had struck and injured the children, petitioner was arrested and placed in the Gilmer County jail; and that immediately on his release on appeal bond, he left Gilmer County on July 2, 1951; and that "the facts set out in relator's petition and as stipulated above, clearly and fully give the facts and circumstances involved in this proceeding."
The sole question presented by this record is: In the circumstances of this case was the petitioner immune from civil process at the time he was served with process in the civil action? Petitioner asserts here that the mere fact that he intended, when he came into Gilmer County, to remain for a period of a few days could not render his continuing presence in Gilmer County, after he was arrested, one of a voluntary status, when he was, in fact, incarcerated in the county jail there against his will.
The original and prime purpose for which the privilege of immunity from civil process on nonresidents of a county or state charged with crime therein was the protection of the court itself from interference with its judicial processes. Thus, originally the rule was asserted as the privilege of the court to secure the administration of justice free from outside interference or influence. Later the rule was enlarged for the protection of suitors, witnesses, jurors, and court officials from process, both in civil and criminal cases. Whited v. Phillips, 98 W.Va. 204, 205, 206, 126 S.E. 916, 917, 40 A.L.R. 83. In the Whited case the Court said: "It is well said that, if there is ever a time when a man should be relieved of all other concerns, and when he should be permitted to use unhampered his every faculty, it is when he is on trial under charge of a crime. Judicial reasoning also recognizes the right of a man, ordinarily, to be tried by a jury in the vicinity in which he resides, so that he may have such advantage and safeguard there as his conduct and character shall merit."
In addition the privilege of immunity from civil process of a nonresident of a county or state, charged with crime therein, has underlying it the public policy that a person charged with crime in a county of which he is a nonresident will not be deterred from appearing before the courts of that county or state by the threat of civil or other process; and thus a person so charged with crime because of the immunity extended will be encouraged to return to the county or state in which he is charged with crime to respond to the criminal process.
The controlling facts in this record are that the petitioner, a nonresident of Gilmer County, came into the county voluntarily to spend a few days; and while in the county he was arrested and incarcerated in the Gilmer County jail, where the process in the civil action was served upon him; so that while in the first instance petitioner's presence in the county was voluntary, after his arrest and incarceration it became involuntary. The question whether the petitioner was immune from the service of civil process presented by this state of facts is novel in this jurisdiction.
In the syllabus to Whited v. Phillips, supra, perhaps the leading case in this jurisdiction, bearing on the instant subject matter, this Court held: "A non-resident of *115 West Virginia, who voluntarily and without compulsion of law, submits himself to the jurisdiction of a state court, in answer to an indictment therein against him, and who is not at the time a fugitive from justice, is privileged while attending court from service of process in a civil suit." In this jurisdiction the immunity rule has been applied to a case in which a defendant in a civil action was served with process while he was in a county, of which he was not a resident, in obedience to a citation from a member of the Department of Public Safety to answer a criminal charge. Morris v. Calhoun, 119 W.Va. 603, pt. 3 syl., 195 S.E. 341. It has also been applied to a case in which a person charged with a criminal offense in a county of which he was a nonresident, was arrested therefor in that county and later released on bond on his own recognizance, and who, in pursuance of such recognizance, returned to the county to answer the charge on the day set for trial. Lang v. Shaw, 113 W.Va. 628, syl., 169 S.E. 444. But in the case of State ex rel. Godby v. Chambers, 130 W.Va. 115, pt. 2 syl., 42 S.E.2d 255, 256, this Court held that "A person serving a sentence for a misdemeanor is not immune to the service of a summons in a civil proceeding." In the Godby case the Court refused the writ of prohibition on the ground that after petitioner's conviction, sentence, and incarceration on a misdemeanor charge, the reason for the application of the immunity rule was not present, and that in that case there was no criminal process within the meaning of the immunity rule. In the opinion in the Godby case, 130 W.Va. at page 120, 42 S.E.2d at page 258, the Court, without citing authority, stated: "It is agreed by all authorities that incarceration of itself does not make the person in prison immune from the service of process."
In the instant case the petitioner went to Gilmer County of his own volition: he did not enter the county in response to a criminal process, because at the time of his entry therein he had committed no crime, and there was pending against him no criminal case. The statement of this Court contained on page 120 of 130 W.Va., at page 255 of 42 S.E.2d, in the opinion in the Godby case, in our opinion, is consonant with the great weight of authority. In Crusco v. Strunk Steel Co., 365 Pa. 326, 74 A.2d 142, 20 A.L.R.2d 160, the Pennsylvania Supreme Court held that a defendant residing outside of a county in which a civil action had been commenced, and who was arrested on a warrant issued on an information of the plaintiff in the civil action and brought within the county, was not immune from civil process merely because of his status as a criminal defendant. For an excellent collation of authorities, see annotation in 20 A.L.R.2d 160, pages 163 to 189, and the following cases cited therein: Dunn's Appeal, 35 Conn. 82; Williams v. Bacon, 10 Wend. 636; Rosenblatt v. Rosenblatt, 110 Misc. 525, 180 N.Y.S. 463; White v. Underwood, 125 N.C. 25, 34 S.E. 104, 46 L.R.A. 706, 74 Am.St.Rep. 630; and Mosier v. Aspinwall, 151 Okl. 97, 1 P.2d 633. "* * * person in custody on a criminal charge, whether before or after conviction, may be served with civil process." 42 Am.Jur., Process, Section 138. In 72 C.J.S., Process, § 82, the rule is well stated as follows: "A person confined in jail on a criminal charge or imprisoned on conviction for such charge is subject to service of civil process, irrespective of the question of residence, at least if he was voluntarily in the jurisdiction at the time of the arrest and confinement." For a case in point, supporting this statement, see Mosier v. Aspinwall, supra.
As the petitioner did not come and was not brought into Gilmer County under criminal process, the reason for the application of the immunity rule is not present, and he is not entitled to the writ of prohibition prayed for.
Writ denied.
LOVINS, Judge (dissenting).
Being of the opinion that the refusal of a writ of prohibition in this case virtually emasculates the principle relative to immunity of a litigant from the service of judicial process in the circumstances here shown, I respectfully dissent.
The rule of immunity of a litigant in attendance upon a court from the service of judicial process is of ancient origin. Some authorities say that it existed in the reign of *116 Edward the Confessor. Other authorities say that references were made to such rule in the Year Books of England as early as the reign of Henry VI. See Whited v. Phillips, 98 W.Va. 204, 126 S.E. 916; dissenting opinion of Judge Haymond in Fisher v. Bouchelle, W.Va., 61 S.E.2d 305, 309, for the historic background of this ancient rule of the common law.
Originally the rule of immunity applied only to the judges and attaches of a court, but gradually it has been extended to cover witnesses and litigants as well. It seems to have been founded on reasons of public policy in that service of process on a judge or official of a court would interfere with the orderly administration of justice and would detract from the dignity of the court. An additional reason in modern decisions has been assigned: that a witness should be free of fear, embarrassment, vexation and harassment while attending a court as a witness in one cause and therefore should be immune from service in a different cause. The same reason has been assigned for the protection of a litigant, that he should not be vexed by the service of process in another action or criminal prosecution.
In this jurisdiction there is no statute dealing with the subject of immunity from service of judicial process to a person to whom the rule applies. The law on the subject will be found in the opinion of this court in Whited v. Phillips, supra [98 W. Va. 204, 126 S.E. 917], and cases subsequently decided by this court hereinafter cited. This court in the Whited case used the following language: "Judicial reasoning also recognizes the right of a man, ordinarily, to be tried by a jury in the vicinity in which he resides, so that he may have such advantage and safeguard there as his conduct and character shall merit. An additional argument for the extension of the rule is that a person should not ordinarily be drawn into a foreign jurisdiction `and there be exposed to entanglements in litigation for from home, which means: he shall be attended with augmented expense.'" In the Whited case the defendant, though a resident of Washington, D. C., voluntarily entered into a bond conditioned for his appearance before the Circuit Court of Roane County, West Virginia. In response to that condition, he appeared and while there was served with process commencing an action at law.
In the case of Lang v. Shaw, 113 W.Va. 628, 169 S.E. 444, a person who was charged with a criminal offense in a county other than that in which he resides, was released upon his own personal recognizance, and in accordance with the condition of such recognizance, appeared in the county where the same was taken, in answer to a criminal charge. While there, he was served with process commencing a civil action. The person so served was held to be immune from service of such process. In Lang v. Shaw, supra, the case of Netograph Mfg. Co. v. Scrugham, 197 N.Y. 377, 90 N.E. 962, 27 L.R.A.,N.S., 333, disapproving the application of immunity was discussed, and the case of Michaelson v. Goldfarb, 94 N.J.L. 352, 110 A. 710, 711, was cited with approval, in which case the rule of immunity applicable to a defendant under an indictment was upheld.
The same question with reference to the immunity of defendant in a criminal action came before this court in the case of Morris v. Calhoun, 119 W.Va. 603, 195 S.E. 341, 343. In the Morris case this court held in the third point of the syllabus: "A defendant in a civil action cannot be legally served with process therein in a county other than that of his legal residence, when in such county in obedience to legal process or its equivalent * * *". [Emphasis supplied.] In the body of the opinion in the Morris case' this court uses the following language: "It appears, therefore, that whether the presence of Morris in Hampshire county was voluntary or in obedience to the citation, his exemption from civil process existed until the necessity for his presence had passed and a reasonable time thereafter * * *." At another point in the Morris case this court uses the following language: "Whether his presence in that county was voluntary or involuntary is immaterial; nor is it of consequence that no warrant had been issued or an indictment returned against him". In the case of State ex rel. Godby v. Chambers, 130 W.Va. 115, 42 S.E. 2d 255, this court held that a sentence for a *117 misdemeanor was not process within the meaning of the immunity rule here discussed, and that a person having been convicted of crime and serving the sentence imposed as a result of such conviction is not immune from service of process sued out in a civil proceeding. In the case of Fisher v. Bouchelle, supra, this court denied the application of the immunity rule where a defendant in a civil action was served while attending court in the county of his legal residence.
In the State of Virginia a leading case on this subject is that of Commonwealth v. Ronald, 4 Call 97, 8 Va. 97. For a later case decided by the Supreme Court of Appeals of Virginia, see Wheeler v. Flintoff, 156 Va. 923, 159 S.E. 112.
Examination of cases cited in the majority opinion necessarily leads to the conclusion that they lose some of their pursuasive force when it is considered that in many of those cases the court considered statutory provisions dealing with the immunity rule. In this jurisdiction we have no statute concerning the immunity of a litigant.
The specific question here considered is: May a defendant in a criminal charge, confined in jail on such charge and unable to furnish bail bond, be served with process commencing a civil action based on the same facts as those involved in the criminal prosecution?
An examination of the various authorities will disclose that the courts of last resort which have considered this question are not in accord and that the authorities are in confusion with respect to the same. For the variant decisions, see Fifth Decennial Digest, Volume 37, p. 1428; Fourth Decennial Digest, Volume 26, p. 587; Third Decennial Digest, Volume 22, p. 1429; American Digest, Second Decennial Edition, Volume 18, p. 1222; American Digest, Decennial Edition, Volume 16, p. 1443; where the subject of immunity of parties to litigation is dealt with in variant and diverse ways.
The case of Cook v. Cook, 132 N.J.Eq. 352, 28 A.2d 178, holds that a non-resident of the state voluntarily within the jurisdiction of a state as a defendant in a criminal case is immune from the service of the writ ne exeat. See Feuster v. Redshaw, 157 Md. 302, 145 A. 560; Lingemann v. Deknke, 247 Mich. 597, 226 N.W. 259, 65 A.L.R. 1367; Annotation, 65 A.L.R. 1370; Annotation, 14 A.L.R. 771. For a restricted application of the rule of immunity, see the case of White v. Ordille, 229 N.C. 490, 50 S.E.2d 499.
In Alderson on Judicial Writs and Process, Page 273, the following pertinent and pursuasive language is used: "The inconvenience, expense, disadvantage and peril of one who is compelled to litigate his rights in a strange jurisdiction, arc vividly and correctly detailed in the cases, and constitute the chief reason for refusing to permit him to be subjected to a service of process when in a foreign jurisdiction by compulsion. The reason prevails with equal force whether the party suing had aught to do with the circumstances attending the presence of the person in the jurisdiction, or was entirely innocent of the fraud, force or criminal proceeding which brought him there. If he is there involuntarily, that is by fraud or compulsion, he is and should be within the rule, and justice demands that his personal rights be not violated by the service of process, regardless of whether or not the suing party is in any way responsible for the unwilling presence." See Bowers on Process and Service, Section 382.
In the instant case, Sivnksty came into Gilmer County voluntarily for the purpose of fishing. While there, he had an accident and thereafter was incarcerated in the jail. His presence in Gilmer County, originally voluntary, became involuntary. As stated in Morris v. Calhoun, supra, I think whether Sivnksty came into Gilmer County voluntarily or otherwise has no pertinency to the question here presented.
Sivnksty will be forced to trial in a county far from his residence, among strangers. Even though he may have led an exemplary life and may have had a good reputation in the county of his residence, he would derive little or no benefit from those factors. In addition, he was harassed in his defense of the criminal charge by the institution of the civil suit against him while the criminal charge was still pending. This case is dissimilar *118 from State ex rel. Godby v. Chambers, supra. In that case, the defendant had already been convicted.
Another element enters into this case. It is a matter of common knowledge that in this day and age there is much travel by motor vehicles. Under the rule laid down in the majority opinion, the luckless motorist, who has the misfortune to have an accident injuring persons or property in a county or state far from his residence, may be arrested and incarcerated in jail on a criminal charge, based on a real or fancied violation of an ordinance or statute having no connection with the accident, and while so incarcerated, the person suffering the injury would immediately commence an action in his own home county for the recovery of alleged damages. This could and may lead to widespread abuse of judicial process.
I think that the award of a writ of prohibition in this case would have been consonant with the decided cases in this jurisdiction hereinabove cited, as well as the well considered cases in other jurisdictions cited in this note of dissent.
I would therefore have awarded the writ of prohibition prayed for herein.