EUGENE JAMES IACUONE

*v.*

FRANK A. PIETRANTON

(No. 10532)

Submitted September 8, 1953. Decided October 13, 1953.

*Charles M. Love, C. Lee Spillers, James R. Wilkin, W. W. Ingram,* for plaintiff in error.

*Pinsky & Mahan, Abraham Pinsky, Walter Mahan,* for defendant in error.

GIVEN, JUDGE:

This writ of error was granted to a judgment entered in a proceeding prosecuted in the Circuit Court of Brooke County, under Code, 30-2-13, reading: "If any attorney receive money for his client as such attorney and fail to pay the same on demand, or within six months after receipt thereof, without good and sufficient reason for such failure, it may be recovered from him by suit or motion; and damages in lieu of interest, not exceeding fifteen per cent per annum until paid, may be awarded against him, and he shall be deemed guilty of a misdemeanor and be fined not less than twenty nor more than five hundred dollars." The indebtedness sued for is the same as that represented by the check for $2,833.33,

involved in the case of *State* v. *Pietranton*, 137 W. Va. 477, 72 S. E. 2d 617.

The defendant, Frank A. Pietranton, an attorney at law, residing in Hancock County and practicing law in Hancock and Brooke Counties, was employed by plaintiff, Eugene James Iacuone, to prosecute an action in Brooke County, for the recovery of damages for injuries sustained by him in an automobile accident. The contract of employment between Iacuone and Pietranton was in writing, but was not produced at the trial. The fee of Pietranton was upon a contingent basis, Pietranton claiming that he was to receive fifty per cent of any recovery, and Iacuone claiming that the contingent fee was to be thirty-three and one-third per cent of any recovery had without trial. Pietranton employed an attorney to assist in the prosecution of the action who, according to Pietranton, was to receive one-half of one-third of any recovery. The attorney so employed by Pietranton apparently understood that he was to have one-half of any fee received by Pietranton. The matters involved in the action were compromised, before any trial, and the amount received by Pietranton, on behalf of Iacuone, was $18,500.00. That sum was disbursed by Pietranton in the following manner: A check for $9,000.01 was drawn to the order of and delivered to Iacuone; a check for $3,083.33 was drawn to the order of and delivered to the attorney employed by Pietranton to assist in the prosecution of the action; a check for $500.00 was drawn to the order of a Doctor Harrington, the physician who treated Iacuone, and which check was delivered to Iacuone; the sum of $3,083.33 was deducted, to be applied on the attorney fee of Pietranton, as claimed by him; and, representing the balance of the $18,500.00, a check for $2,833.33 was drawn payable to Iacuone, and by him indorsed and delivered back to Pietranton. It is the fund represented by this check that is involved here. Iacuone claims that the fund was wrongfully withheld by Pietranton upon a false representation, made at the time of the delivery of the check, and before, to

the effect that the sum was to be paid as a bribe to an attorney who represented one or more of the defendants in the action instituted in the name of Iacuone. Pietranton claims that the amount represented by the check was due him as the balance of the fifty per cent contingent fee. The evidence is in sharp conflict as to whether the check involved was delivered by Pietranton to Iacuone in Hancock County, as contended by Pietranton, or whether it was delivered in Brooke County at the residence of Iacuone. Other pertinent facts will appear in the discussion of the several propositions considered.

The first question to be considered relates to the motion of defendant to quash the notice of motion, made upon special appearance, on the ground that a copy thereof was not served upon defendant at least twenty days before the return day thereof. The copy was, in fact, served upon defendant thirteen days before the return day. Defendant contends that Code, 56-2-6, as amended, applies, and that by virtue thereof he was entitled to at least twenty days notice before the return day thereof. But the proceeding was prosecuted under Code, 30-2-13, quoted above, which contains no language relating to the service of any notice of motion. In such circumstances, Code, 56-2-5, governs. Its provisions are clear, and require only "ten days' notice".

A more serious question is raised by the action of the trial court in sustaining plaintiff's demurrer to a plea in abatement filed by defendant. The plea alleges, in effect, that defendant, at all times material, was a resident of Hancock County; that the criminal proceeding of State v. Pietranton, mentioned above, was pending in Brooke County; "that on June 23, 1951, the defendant received a telegram from R. E. Hagberg, Prosecuting Attorney of Brooke County, West Virginia, reading as follows: 'Take notice that on June 26, 1951, at 9:30 A. M. an order will be tendered court for entry on proceedings had Thursday in State vs. Pietranton and under Sections 2855 and 2858 of Code at which time you may appear

if you see fit' "; that defendant, pursuant to the notice so given, did appear before the Circuit Court of Brooke County, at which time the license of defendant to practice law was annulled and defendant was removed from the office of Prosecuting Attorney of Hancock County and "that immediately after the aforesaid hearing on June 26, 1951, while defendant was leaving the Court House in Wellsburg, Brooke County, West Virginia the said notice of motion for judgment herein was served upon the defendant". For the most part, at least, the evidence introduced at the trial on the merits establishes the truth of the facts alleged in the plea. Was defendant immune from service of the notice of motion for judgment in Brooke County, while attending legal proceedings therein, pursuant to the notice given by the Prosecuting Attorney of Brooke County?

Several decisions of this Court consider the question of immunity or privilege of a party or witness attending a legal proceeding in like or similar circumstances. In the recent case of *State ex rel. Sivnksty* v. *Duffield,* 137 W. Va. 112, 71 S. E. 2d 113, this Court held: "A person who voluntarily enters a county of which he is not a resident and who is arrested and held for a crime committed in such county, is not, by reason of such incarceration alone, immune from civil process served on him while he is so held."

In *State ex rel. Godby* v. *Chambers,* 130 W. Va. 115, 42 S. E. 2d 255, it was held:

"1. A sentence for a misdemeanor is not process within the meaning of the immunity rule."

"2. A person serving a sentence for a misdemeanor is not immune to the service of a summons in a civil proceeding."

In the instant proceeding, it may be noted, the proceeding of State v. Pietranton had not been concluded. That proceeding was pending at the time of the service of the notice of motion upon defendant, for the purpose of

appeal, as well as for the purpose of the hearing to be held pursuant to the notice given by the Prosecuting Attorney of Brooke County.

Courts are not in accord as to whether the rule is available to a resident of a state who appears to answer legal process in a county other than that of his residence. The question has been determined in this State. *Godby* v. *Chambers, supra; Morris* v. *Calhoun,* 119 W. Va. 603, 195 S. E. 341; *Lang* v. *Shaw,* 113 W. Va. 628, 169 S. E. 444. In the case last cited, the Court held: "A party who is charged with a criminal offense in a county other than that in which he resides, and who was released on his own personal recognizance, and who, in pursuance thereof, appears and answers to the charge on the day set for trial, is not liable to be served in such county with process in a civil action until after a reasonable time has elapsed to enable him to return home."

Of special significance in this case is the holding in *Morris* v. *Calhoun, supra.* There the person claiming the privilege, a resident of Marion County, was involved in an automobile collision in Hampshire County. "A charge of reckless driving, probably informal, was lodged against the petitioner by a trooper of the Department of Public Safety, and he was cited by such authority to appear in Hampshire County * * *". At a later date, in answer to the citation, he returned to Hampshire County, where a warrant was issued against him. While consulting with his attorney concerning the charge contained in the warrant, civil process which issued from the Circuit Court of Hampshire County was served upon him. The Court held: "3. A defendant in a civil action cannot be legally served with process therein in a county other than that of his legal residence, when in such county in obedience to legal process or its equivalent; and while in such county in obedience to a citation of a member of the Department of Public Safety to answer a criminal charge, may not be served with such process so long as the necessity for his presence to answer such

charge continues, and a reasonable time thereafter." Undoubtedly, the notice given to defendant in the instant case was as efficacious as that given by the member of the Department of Public Safety.

The decisions referred to make it clear, we believe, that the defendant in the instant case was entitled to claim immunity from service of the notice of motion in Brooke County, while he was attending legal proceedings pursuant to a notice received by him from the Prosecuting Attorney of Brooke County, and that the Circuit Court of Brooke County acquired no jurisdiction over the person of the defendant by virtue of the service of the notice of motion. We have not failed to consider the contention of plaintiff to the effect that defendant was a practicing attorney in the Circuit Court of Brooke County, and that the circuit court has inherent power to discipline attorneys practicing therein. We think of no reason, however, why an attorney sued in a civil action in the courts of this State should not be entitled to the same privileges accorded other citizens in the service of process.

The next question to be considered relates to the right of plaintiff to maintain an action for the indebtedness sued for in the Circuit Court of Brooke County. The action was prosecuted in Brooke County on the theory that part of the cause of action arose in that county, and that the action may be prosecuted " * * * in any county wherein the cause of action, or any part thereof, arose * * * ", pursuant to the provisions of Code, 56-1-2. Defendant contends that since the money was received by him in Hancock County, and by him withheld in that county, no part of the cause of action arose in Brooke County. We conclude that part of the cause of action arose in Brooke County. Code, 30-2-13, quoted above, under which this proceeding was prosecuted, required the defendant "to pay" unto the plaintiff any money received by him for the plaintiff. Plaintiff was, at the time material, a resident of Brooke County, and this

Court has held it to be the duty of a debtor to seek his creditor and make payment to him, at his place of residence, if provision as to the place for payment is not otherwise provided. *Jones* v. *Main Island Creek Coal Co.*, 84 W. Va. 245, 99 S. E. 462. Therefore, in the circumstances of this case, it was the duty of defendant to pay any sum owing by him to plaintiff at the residence of plaintiff in Brooke County, and failure to pay in that county constituted part of the cause of action upon which the notice of motion for judgment proceeding was instituted.

The trial court refused to give the jury any instruction offered by the parties, and gave, in lieu of instructions, a general charge. Plaintiff, after hearing the charge read by the court, withdrew his instructions. Defendant did not withdraw the instructions offered by him, and insisted upon the objections made by him to the action of the court in refusing to give to the jury some of such instructions. He also made a "general objection" to the giving of the charge and, before the charge was read to the jury, stated to the court that he would specify his objections thereto " * * * as soon as I have that opportunity, if the court will allow me." The court replied: "As soon as I can get a typewritten copy. I can't get a typewritten copy today. * * * But, of course, he is entitled to a copy of this. Well, I am inclined to give him the opportunity to note his objections fully. As he said, he is not in a mental condition at the present time to thoroughly and competently and fully grasp everything that is in the instruction or charge, and the court can realize his embarrassment and his troubles, and I am inclined to let him note his objections as soon as I can furnish him with a typewritten copy." Later, but after the return of the verdict, specific objections were made by the defendant and filed in open court. Apparently the charge was prepared by the trial judge in his own handwriting and by him read to counsel in chambers, before reading the same to the jury. No copy thereof appears to have been furnished counsel and, as appears from the state-

ment of the court quoted above, defendant had no opportunity to examine the charge or to specify his objections thereto before the giving thereof to the jury.

Code, 56-6-19, authorizes a trial judge to read unto a jury, in lieu of specific instructions offered by the parties, a written "orderly and connected charge, incorporating therein the substance and, as far as may be, the language of the instructions prepared on either side or prepared by the court on its own motion, with correctly propounded law applicable to the case, which written charge shall first be submitted to counsel on each side with opportunity to specify and object to any part thereof * * * ". In *State* v. *Cutlip,* 131 W. Va. 141, 46 S. E. 2d 454, the Court pointed out that provisions of the statute were mandatory, citing *Henderson* v. *Kessel,* 93 W. Va. 60, 116 S. E. 68, and *State* v. *Clark,* 64 W. Va. 625, 63 S. E. 402. In the *Henderson* case the question arose concerning the giving of an oral instruction. The Court, in considering the question whether the statute is directory or mandatory, stated: " * * * To hold it merely directory would be in effect to repeal it. Before it was enacted, the courts had the right to do what it says now they shall do, and it clearly meant to give the trial court no right to give oral instructions governing the matters in issue. It made no difference that what the court said in this case was at the time reduced to short-hand notes by a reporter. Counsel should be given the right accorded by the statute of reading the instructions before they are given. Other states have similar statutes, and their courts hold this view. See: *Bradway* v. *Waddell,* 95 Ind. 170; *Illinois etc. R. Co.* v. *Hammer,* 85 Ill. 526; *Swartwout* v. *R. R. Co.,* 24 Mich. 389; *Doggett* v. *Jordan,* 2 Fla. 541; *Box Co.* v. *Lumber Co.,* 99 Tenn. 122, 41 S. W. 351. It was therefore error to give such oral instructions."

The cases cited deal more particularly with single instructions, but the reasons for the holding apply as strongly to a charge. Usually a single instruction is not

so long or involved as a charge. Objections to a single instruction may usually be readily discovered by counsel trying a case, but, as to a charge, time and effort will usually be needed. If counsel must be accorded the right and opportunity to examine an instruction before it is given to the jury, certainly counsel should be accorded the right and opportunity to examine a charge before it is given to the jury. To deny the right until after the charge is read to the jury would, in effect, usually amount to denial of that right. Therefore, it was prejudicial error to read the charge to the jury before the defendant was afforded an opportunity to examine it and make specific objections thereto, had he been so advised.

The charge given to the jury, mentioned above, contained this language: " * * * It is agreed by the parties that settlement was had after action was filed in court, but that the settlement was had out of court and without trial, for the sum of $18,500, and that sum was placed in Pietranton's hands for disbursement; that out of the $18,500, Pietranton paid $500 to Dr. Harrington for his services to Iacuone, $6,166.66, (or one-third of the $18,500) to Frank A. O'Brien and himself, (or $3083.33 to each) ; that he paid to Iacuone $9,000.01, which left in Pietranton's hands $2833.33; that, as to this amount of $2833.33, Pietranton represented to Iacuone that that sum had to be paid to Joseph R. Curl, because he, Pietranton, had promised to give to said Curl one-third of any amount the said Curl would be able to induce his client, the insurance company, to pay to Iacuone in excess of $10,000; that the representation made by Pietranton that the said Curl had to be paid the sum of $2833.33 was untrue and that it was made to deceive Iacuone; that Pietranton never paid any sum of money to said Curl, but that Pietranton appropriated it to his own use and retained from Iacuone the said sum of $2833.33." Defendant contends that the giving of such part of the charge constituted prejudicial error, for the reason that the court told the jury that the parties litigant had agreed to some of the very matters in dispute.

We think defendant's contention correct. An examination of the evidence unquestionably discloses that some of the matters which the charge told the jury had been agreed upon were vigorously denied by defendant.

It is the duty of a jury to follow instructions given by the court. 53 Am. Jur., Trial, Section 845. Courts can not invade the province of the jury in determining material disputed questions of fact. 10 M. J., Instru tions, Section 31. It was clearly within the province of the jury in the instant case to determine disputed questions of fact which the charge says were agreed upon by the parties. The language used is not subject to aι. double meaning. See *Bank of Huntington* v. *Napier*, 4ι W. Va. 481, 23 S. E. 800. Neither did it relate merely to an indecisive phase of the case. See *Bailey* v. *Gollehon*, 76 W. Va. 322, 85 S. E. 556, 723. It may be, and probably is, true that the court did not intend, by the language used, to instruct the jury that the parties had agreed on the matters recited. But the language as written will admit of no other meaning. This Court can not assume that the jury did not understand or follow the clear import of the language used.

Numerous other assignments of error have been considered. We think them without merit, or of such nature as not likely to occur at any later trial, and any discussion relating to them could therefore serve no useful purpose.

From what has been said, it necessarily follows that the judgment of the Circuit Court of Brooke County complained of must be reversed, the verdict of the jury set aside, and the case remanded to that court for such further proceedings as the parties may be advised.

*Reversed; verdict set
aside; remanded.*