147 N.J. Super. 286 (1977)
371 A.2d 292
AMBASSADOR INSURANCE COMPANY, A CORPORATION OF THE STATE OF VERMONT AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY. PLAINTIFF-RESPONDENT,
v.
RAFAEL MONTES, ADMINISTRATOR OF THE ESTATE OF MARILYN ORTEGA PEREZ, DECEASED; RAFAEL MONTES, ADMINISTRATOR AD PROSEQUENDUM OF MARILYN ORTEGA PEREZ, DECEASED; AND JUNA ORTEGA GOMEZ, DEFENDANTS-APPELLANTS, AND JOSEPH SATKIN; JOYCE SMITH; HENRY PITTS AND DRACHIR, INC., A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1977.
Decided February 8, 1977.
*289 Before Judges BISCHOFF, MORGAN and RIZZI.
Mr. Robert J. Galluccio argued the cause for appellants (Messrs. Goodman and Rothenberg, attorneys).
Mr. Leonard Rosenstein argued the cause for respondent (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
The opinion of the court was delivered by BISCHOFF, J.A.D.
Ambassador Insurance Company issued a comprehensive liability insurance policy to Joseph Satkin, described in the policy as being in the real estate business. The properties covered by the policy included 78 and 82 *290 Washington Place, Passaic. The first was described in the policy as being used for "mercantile and apartments" and the second as a "four-family dwelling." The policy was in effect on May 11, 1973 when a fire which destroyed the premises resulted in the death of Marilyn Ortega Perez, a tenant who lived therein.
Satkin's conviction for arson of the building and the murder of Marilyn Ortega Perez on the felony-murder theory was affirmed by the Appellate Division and certification denied by the Supreme Court. State v. Satkin, 70 N.J. 147 (1976).
A civil suit was instituted in Superior Court against Satkin and others to recover damages for the alleged wrongful death of Marilyn Ortega Perez. Plaintiff Ambassador then instituted this present action, seeking a judgment declaring that it is not obligated to defend Satkin in the wrongful death action or to pay any judgment which may be recovered against him in that action.
Trial of the declaratory judgment action established that Satkin, as landlord of the buildings in question, had knowledge that they were occupied by tenants and that while Satkin did not personally set the fire, he procured another to do so in furtherance of his scheme to collect the proceeds of a fire insurance policy then in effect covering the buildings.
The trial judge held that the conviction of Satkin for arson was sufficient to establish an intent to consume the building by fire; that since Satkin knew the building was occupied by tenants and their property, "it was reasonable to expect that objects" contained therein would also be consumed by fire and his act in arranging for the fire to be set was "absolutely in disregard" of the safety of those who resided therein. He concluded that the death of the infant was "the intended result of an intended act" and met the test of an intentional injury within the meaning of Lyons v. Hartford Ins. Group, 125 N.J. Super. 239, 244 (App. Div. 1973), and accordingly held that there was no coverage *291 under the Ambassador policy. In doing so, we conclude that he erred. The standard used by the trial judge improperly embodied traditional negligence concepts of reasonable foreseeability not appropriate to a determination of coverage afforded by a liability insurance policy.
The policy issued by plaintiff Ambassador provided that it would "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * *." The absence of a specific exclusion from coverage for intended bodily injuries, such as existed in the policy involved in Lyons v. Hartford Ins. Group, supra at 244, is without significance to coverage. Public policy prohibits insurance indemnity for the civil consequences of one's intentional wrongdoing. Malanga v. Manufacturer's Cas. Ins. Co., 28 N.J. 220, 225 (1958); Lyons v. Hartford Ins. Group, supra 125 N.J. Super. at 244-45. Thus, we approach this case as though the policy contained an exclusion for the civil consequences of one's intentional wrongdoing. However, this public policy should not be liberally applied or broadly construed in favor of the insurer. Ruvolo v. American Cas. Co., 39 N.J. 490, 498 (1963).
It is the general rule that under liability policies with such exclusions, coverage exists for bodily injury which was the unintended result of an intentional act but not for injuries which were intentionally inflicted. Lyons v. Hartford Ins. Group, supra 125 N.J. Super. at 245. Coverage is denied where the intended act results in an intended injury, and this is so even if the actual injury inflicted is more severe than that intended. Oakes v. State Farm Ins., 137 N.J. Super. 365 (App. Div. 1975).
The rule, although clear in its statement, is often difficult to apply. In an annotation on the subject, 2 A.L.R.3d 1238, 1243 (1965), the writer suggests that the exclusion is applicable "if the insured acted with specific intent to cause harm to a third party."
*292 "Intent" is defined in Restatement, Torts 2d, § 8A (1965), in the following terms:
The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.
This definition was adopted in the case of Hanover Ins. Group v. Cameron, 122 N.J. Super. 51 (Ch. Div. 1973).
Certainly, the actions of Satkin fall within the definition of wanton and reckless conduct. See, Restatement, Torts 2d, § 500 (1965); McLaughlin v. Rova Farms, 56 N.J. 288, 305 (1970). But, in order for the public policy against indemnity to apply and relieve an insurer of its contractual obligation to indemnify an insured, more than wanton and reckless conduct must be involved. While it may not be necessary that the actor intend the very consequences that occur, if he knows that injuries are certain or substantially certain to follow from his act and still goes ahead it is the same in law as if he had, in fact, intended the end result. See Reporter's Notes to § 8A of Restatement, Torts 2d.
In order to warrant the denial of indemnity under a policy of insurance to a member of the public injured by an intentional act of an insured, it should appear that either (a) the insured had the specific intent to inflict the injuries that occurred, or (b) he knew the injuries were substantially certain to follow the performance of the intentional act.
This case was submitted to the trial judge on a stipulation of facts. Rather than remand for the application of the proper standard, we elect to exercise our original jurisdiction, R. 2:10-5, and reach our own conclusions on the record.
Here, Satkin intended to burn the building for profit. No one suggests that he set the fire to injure or kill. The resulting injuries and death were the unfortunate, but *293 unintended, result of his wanton and reckless disregard for the safety of those living in the building.
The proofs do not establish that Satkin intended to cause the injuries and resulting death of Marilyn Ortega Perez or that he knew the injuries and resulting death were substantially certain to follow from his actions.
We hold that public policy does not require the exclusion of indemnity provided by Ambassador's policy of insurance and reverse the judgment entered for plaintiff.