532 S.E.2d 50

**STATE of West Virginia ex rel. David DAVIDSON, Individually, and Davidson Construction Services, Petitioners,**

v.

**Honorable Jay M. HOKE, Judge of the Circuit Court of Lincoln County; Mary Ellen Loy Mabe; and Tommie C. Mabe, Respondents.**

No. 26738.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2000.

Decided April 24, 2000.

Concurring Opinion of Justice Starcher July 19, 2000.

John R. Fowler, James C. Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, West Virginia, Attorneys for the Petitioners.

Ronald J. Flora, Milton, West Virginia, Attorney for the Respondents, Mary Ellen Loy Mabe and Tommie C. Mabe.

PER CURIAM:

The petitioners herein, David Davidson, individually, and Davidson Construction Services [1] [hereinafter collectively referred to as "Davidson" or "Petitioner Davidson"], request this Court to issue a writ of prohibition to prevent the respondent herein, the Honorable Jay M. Hoke, Judge of the Circuit Court of Lincoln County, from enforcing his August 24, 1999, declaratory judgment order. In that order, Judge Hoke determined that certain exclusions contained in Davidson's commercial general liability insurance policies precluded coverage for a contract claim asserted against Davidson by the additional respondents herein, Mary Ellen Loy Mabe and Tommie C. Mabe [hereinafter collectively referred to as "the Mabes" or "Mr. and Mrs. Mabe"], but that such exclusions did not bar recovery for their tort claim. Upon a review of the parties' arguments and the pertinent authorities, we deny the writ of prohibition. Our denial of prohibitory relief is based upon our conclusions that this case does not warrant the exercise of this Court's original jurisdiction and that the alleged errors of law do not merit the issuance of an extraordinary remedy.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts communicated by the parties are as follows. Mr. and Mrs. Mabe arranged for Davidson to construct a residence upon a piece of property in Lincoln County, West Virginia. The parties represent that, at all times pertinent to the construction of the Mabes' home, Davidson was insured by policies of commercial general liability insurance.[2] At some unidentified point in time,[3] the Mabes became dissatisfied with Davidson, and filed a complaint in the Circuit Court of Lincoln County, charging Davidson with breach of contract and intentional infliction of emotional distress.

During the pendency of the circuit court proceedings, Davidson filed a petition for Chapter 7 bankruptcy,[4] which automatically stayed the Mabes' action against him.[5] The bankruptcy court subsequently lifted the stay of the Mabes' lawsuit to the extent that Davidson's policies of insurance provide coverage for these claims. In response to this ruling, both parties filed motions for declaratory judgment in the circuit court proceedings. By order entered August 24, 1999, the Honorable Jay M. Hoke, Judge of the Circuit Court of Lincoln County, determined that various exclusions contained in Davidson's policies of insurance did not preclude coverage for the Mabes' claim for intentional infliction of emotional distress and, therefore, ordered that portion of the lawsuit to be set for trial.[6] From this ruling of the circuit court, Davidson petitions this Court for prohibitory relief to prevent the circuit court's enforcement of its declaratory judgment order and to quash the trial of the Mabes' intentional infliction of emotional distress claim.

1. Davidson Construction Services is a West Virginia licensed construction contractor that specializes in the construction of single family dwellings.

2. During the time period in question, Davidson was insured by two separate policies of insurance. From August 23, 1995, until August 23, 1996, Davidson was insured by United States Fidelity and Guaranty Insurance Company. Thereafter, from January 19, 1997, until January 3, 1998, Davidson's commercial general liability insurance coverage was provided by Nationwide Mutual Insurance Company.

3. The absence of a record in this case and the parties' sketchy recitations of the events culminating in the instant controversy do not indicate whether the Mabes' complaints surfaced during Davidson's construction of their home or after the completion thereof.

4. Chapter 7 bankruptcy anticipates liquidation of the debtor's estate. *See* 11 U.S.C. § 701, *et seq.*

5. *See* 11 U.S.C. § 362 (1994 & Supp. IV 1998) (discussing automatic stay of pending or potential litigation against the debtor, which stay is activated by the commencement of the debtor's bankruptcy proceedings).

6. Although the circuit court's order is not a model of clarity, it appears that the court also ruled that certain policy exclusions applied to the Mabes' contractual claim, thereby thwarting recovery from Davidson's insurers for such damages.

## II.

### DISCUSSION [7]

■ The sole legal issue raised by Petitioner Davidson in this original jurisdiction proceeding involves his commercial general liability insurance policies and questions the existence of coverage for and the applicability of an intentional acts exclusion to the Mabes' intentional infliction of emotional distress claim. During our consideration of this case, however, we are troubled that, despite these potentially meritorious arguments, our ability to decide these issues is severely hampered by the procedural posture of this matter and by the lack of an adequate record to guide our analysis.[8] As a result, we recognize the need to address the propriety of a petition for writ of prohibition in the instant proceeding.

■ Prohibition, much like its companion original jurisdiction writs of mandamus and habeas corpus, is an extraordinary remedy, the issuance of which is usually "reserved for really extraordinary causes." *State ex rel. Suriano v. Gaughan*, 198 W.Va. 339, 345, 480 S.E.2d 548, 554 (1996) (internal quotations and citations omitted). For this reason, the circumstances warranting a writ of prohibition are limited.

"A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va.Code*, 53–1–1." Syllabus point 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

Syl. pt. 1, *State ex rel. State Auto Ins. Co. v. Risovich*, 204 W.Va. 87, 511 S.E.2d 498 (1998) [hereinafter referred to as "*State Auto*"].

Having enunciated this standard, we first must determine whether the circuit court had jurisdiction of the underlying declaratory judgment action. Syl. pt. 1, *State Auto*, 204 W.Va. 87, 511 S.E.2d 498. Pursuant to W. Va.Code § 55–13–1 (1941), circuit courts unquestionably have jurisdiction of declaratory judgment proceedings: "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed...." With specific regard to the type of lawsuit involved in the instant controversy, we previously have held that "[a]n injured plaintiff may bring a declaratory judgment action against the defendant's insurance carrier to determine if there is policy coverage before obtaining a judgment against the defendant in the personal injury action where the defendant's insurer has denied coverage." Syl. pt. 3, *Christian v. Sizemore*, 181 W.Va. 628, 383 S.E.2d 810 (1989). *See also* W. Va.Code § 55–13–2 (1941) ("Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."). Because the circuit court clearly had jurisdiction of the matter com-

---

7. Although a separate and distinct section delineating the appropriate standard of review often precedes our discussion of the errors raised by the parties, the anomalous procedural posture of the case *sub judice* requires us to consider the applicable method of review as an integral part of our decision herein.

8. The record in this case consists of the two insurance policies in question and the circuit court's declaratory judgment order. While we recognize, of course, that original jurisdiction proceedings generally are not accompanied by detailed factual records, further factual information by way of addenda or appendices would have been instructive to our consideration of the instant matter. *See* W.Va.R.App.P. 14(a) (indi-

cating that a petition for a writ arising from this Court's original jurisdiction should include "an attached addendum or separate appendix of any exhibits or affidavits" and directing that "[i]n any original jurisdiction proceeding which involves a matter that is presently pending in circuit court where a written order has been entered in that court relating to matters sought to be adjudicated in the original jurisdiction proceeding, a copy of such order shall be filed with the petition") and W.Va.R.App.P. 14(f) (instructing that "[t]he record [for an original jurisdiction proceeding] shall consist of the pleadings, the addenda, the appendices, depositions filed under [W.Va.R.App.P.] Rule 14(d), and findings of fact made under [W.Va.R.App.P.] Rule 14(e)").

plained of herein, prohibition is not appropriate on jurisdictional grounds.

■ The second factor to consider in assessing the propriety of prohibitory relief is whether the circuit court exceeded its legitimate powers by rendering its declaratory ruling. Syl. pt. 1, *State Auto,* 204 W.Va. 87, 511 S.E.2d 498.

" 'In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.' Syllabus Point 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979)." Syllabus point 1, *State ex rel. U.S. Fidelity & Guar. Co. v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995).

Syl. pt. 2, *State Auto,* 204 W.Va. 87, 511 S.E.2d 498.[9] Stated otherwise,

"[t]he prohibition standard set out in Syllabus Point 1 of *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), permits an original prohibition proceeding in this Court to correct substantial legal errors where the facts are undisputed and resolution of the errors is critical to the proper disposition of the case, thereby conserving costs to the parties and economizing judicial resources." Syllabus point 1, *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993).

Syl. pt. 3, *State Auto,* 204 W.Va. 87, 511 S.E.2d 498. *See also* Syl. pt. 1, *State ex rel. Williams v. Narick,* 164 W.Va. 632, 264 S.E.2d 851 (1980) (" 'Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.' Syl. pt. 2, *Woodall v. Laurita,* 156 W.Va. 707, 195 S.E.2d 717 (1973)."). Thus, it is apparent that prohibition generally lies to correct only clear-cut or substantial errors of law, which violate a constitutional, statutory, or common law mandate. Syl. pts. 2 & 3, *State Auto,* 204 W.Va. 87, 511 S.E.2d 498.

Applying this standard to the instant proceeding, we conclude that the legal issues raised herein do not come within this rubric of readily-apparent errors of law. Petitioner Davidson has not based his request for relief upon either a constitutional mandate or a statutory provision to demonstrate the wrongfulness of the circuit court's ruling. Neither can it be argued that this controversy is governed by a controlling common law precedent. The primary case upon which the petitioner relies, *State Bancorp, Inc. v. United States Fidelity & Guar. Ins. Co.,* 199 W.Va. 99, 483 S.E.2d 228 (1997) (per curiam),

---

**9.** A similar recitation of the factors to consider in reviewing a prohibition petition is set forth in Syllabus point 4 of *State ex rel. Hoover v. Berger:*

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

199 W.Va. 12, 483 S.E.2d 12 (1996).

was rendered by this Court as a per curiam decision. As such, it is not binding authority so as to necessitate the issuance of a writ of prohibition to halt a circuit court's deviation therefrom. *See State v. Myers,* 204 W.Va. 449, 464 n. 13, 513 S.E.2d 676, 691 n. 13 (1998) ("remind[ing] counsel that per curiam opinions stand alone factually and are not to be cited as precedent"); *Weaver v. Ritchie,* 197 W.Va. 690, 693 n. 10, 478 S.E.2d 363, 366 n. 10 (1996) (noting "lack of any precedential value of . . . per curiam opinion[s]" (citations omitted)); *Board of Educ. of Mercer County v. Wirt,* 192 W.Va. 568, 575 n. 10, 453 S.E.2d 402, 409 n. 10 (1994) (observing that per curiam opinion "is not binding upon this Court" (citations omitted)); *Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) (explaining that "if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a *per curiam* opinion"). *Cf.* Syl. pt. 3, in part, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996) (counseling that prohibition does not lie as a substitute for appeal); *State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 41, 277 S.E.2d 718, 722 (1981) (same); *Handley v. Cook,* 162 W.Va. 629, 631, 252 S.E.2d 147, 148 (1979) (same). Accordingly, we do not find that the errors of law alleged by Davidson are so egregious as to require correction through the extraordinary remedy of prohibition.[10]

■ Moreover, we conclude that the remaining criteria involved in our decision to grant prohibitory relief do not warrant the issuance of a writ in this case. As we noted above, the errors of law alleged in this case do not rise to the level of substantial issues of constitutional, statutory, or common law. Syl. pts. 2 & 3, *State Auto,* 204 W.Va. 87, 511 S.E.2d 498. Thus, the issues which Petitioner Davidson would have us resolve amount to little more than ordinary legal errors, which we typically review by way of appeal, and not in the context of prohibition proceedings: "[i]t is well established that prohibition does not lie to correct mere errors and cannot be allowed to usurp the functions of appeal, writ of error, or certiorari. . . ." *Handley v. Cook,* 162 W.Va. at 631, 252 S.E.2d at 148 (citations omitted).[11] *See also* Syl. pt. 3, in part, *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 ("Prohibition . . . may not be used as a substitute for [a petition for appeal] or certiorari." (internal quotations and citation omitted)); *State ex rel. Maynard v. Bronson,* 167 W.Va. at 41, 277 S.E.2d at 722 ("[P]rohibition cannot be substituted for a writ of error or appeal unless a writ of error or appeal would be an inadequate remedy." (citations omitted)); *State ex rel. Casey v. Wood,* 156 W.Va. 329, 334–35, 193 S.E.2d 143, 146 (1972) (same); *Fisher v. Bouchelle,* 134 W.Va. 333, 335, 61 S.E.2d 305, 306 (1950) (same).[12] Likewise, we do not find

10. In presenting this matter to this Court as a request for prohibitory relief, Davidson also relies heavily upon this Court's prior decision in *State ex rel. State Auto Insurance Co. v. Risovich,* 204 W.Va. 87, 511 S.E.2d 498 (1998), as support for his position that "[t]his Court has previously indicated that prohibition is proper with respect to resolving a threshold legal issue regarding insurance coverage." (Citation omitted). While we did exercise our original jurisdiction in that case, which involved a question of insurance law, the facts of *State Auto* are distinguishable from those known to be involved in the instant proceeding. 204 W.Va. at 88–90, 511 S.E.2d at 499–501. Furthermore, our decision to examine the merits of the writ in that case was strongly motivated by the existence of a clear split of authority among the circuit courts of this State with respect to the legal issues raised therein. 204 W.Va. at 91 & n. 8, 511 S.E.2d at 502 & n. 8.

11. Where, however, a circuit court's jurisdiction has been challenged,

> [o]ne seeking relief by prohibition in a proper case is not required, as a prerequisite to his

right to resort to such remedy, to wait until the inferior court or tribunal has determined the question of its jurisdiction, or to wait until the inferior court or tribunal has taken final action in the matter in which it is proceeding or about to proceed.

Syl. pt. 5, in part, *State ex rel. City of Huntington v. Lombardo,* 149 W.Va. 671, 143 S.E.2d 535 (1965). This precedent has no application to the instant petition, however, as we have determined that the circuit court had jurisdiction to render the declaratory judgment challenged herein.

12. Although we have also held that a party may obtain prohibitory relief from a non-appealable interlocutory order in certain, limited instances, we do not find that the present proceeding requires such a remedy or that the circuit court's declaratory judgment order sufficiently sets forth the requisite findings of fact. *See* Syl. pt. 6, *State ex rel. Allstate Ins. Co. v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75 (1998) ("A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory deci-

that "the over-all economy of effort and money" warrant extraordinary relief in this case, or that the alleged errors of law would necessarily result in the subsequent reversal of this case so as to require an expedited remedy. Syl. pt. 2, in part, *State Auto,* 204 W.Va. 87, 511 S.E.2d 498.

## III.

## CONCLUSION

For the reasons expressed in the body of this opinion, we find the instant petition does not warrant the extraordinary remedy of prohibition. Accordingly, the writ requested is hereby denied.

Writ Denied.

STARCHER, Justice, concurring:

(Filed July 19, 2000)

This case presents the arcane world of "commercial general liability" policies, where the typical owner of a small commercial enterprise buys insurance to provide protection for "general liability"—when, unknown to the small business owner, the policy is actually so laced with exclusions that the policy provides virtually no protection against liability whatsoever. The applicability of the "intentional acts" exclusion asserted by the insurance company in this case is a perfect of example of the policyholder not getting what he thought he paid for.

Figuring out whether or not the exclusion applies is an incredibly fact-intensive question, yet the insurance company filed this petition for a writ of prohibition contending that the applicability of the exclusion is entirely a legal question. I agree with the majority's decision to deny the writ of prohibition, because whether the petitioner in this case is affected by the exclusion is a question of fact for a jury, not a question of law for a judge.

The facts of this case appear to be quite simple. The petitioner is a contractor who built the respondents a home. The respondents claim that the contractor did a shoddy job, and sued the contractor for breaching the contract and for inflicting emotional distress upon the respondents.

The contractor then proceeded to declare bankruptcy. The bankruptcy court granted the respondents leave to pursue in state court any claims against the contractor to the extent that the contractor had insurance—otherwise, the assets of the contractor were protected by federal bankruptcy laws.

The insurance company, of course, now claims that there is no insurance coverage. While the contractor purchased a "commercial general liability" policy, that policy is apparently in no way "general." Instead, it contains numerous exclusions. First, the insurance company claims the policy does not cover any actions arising from a "breach of contract." In other words, even if the contractor's employees negligently, recklessly, and stupidly threw caution, the blueprints and their measuring tapes to the wind when they built the respondents' house, the insurance company says there is no coverage. The circuit court granted a declaratory judgment in favor of the insurance company on this issue.[1]

The second issue raised in the trial court by the insurance company, and the focus of its petition for a writ of prohibition, concerns an "intentional acts" exclusion in the policy. The insurance company argues that because of the exclusion, its policy does not cover claims for the intentional infliction of emotional distress, also called the "tort of out-

sion of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form the basis of its decision. In making the request to the trial court, counsel must inform the trial court specifically that the request is being made because counsel intends to seek an extraordinary writ to challenge the court's ruling. When such a request is made, trial courts are obligated to enter an order containing findings of fact and conclusions of law. Absent a request by the complaining party, a trial court is under no duty to set out

findings of fact and conclusions of law in non-appealable interlocutory orders.").

1. Keep in mind that this ruling by the circuit court is not before the Court—the current case is not an appeal of the circuit court's rulings, but is instead a writ of prohibition by the insurance company to stop the circuit court from enforcing another portion of its order against the insurance company.

rage." The insurance company contends that its policy only covers bodily injury or property damage resulting from an accident. The policy language used in the "intentional acts" exclusion states:

This insurance does not apply to:

a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

The insurance company argues that this exclusion, also known as the "expected/intended" exclusion, automatically, as a matter of law, excludes any coverage for the intentional infliction of emotional distress by the policyholder. This is untrue.

Commercial liability insurance policies generally provide coverage for negligent, grossly negligent, and reckless acts. *See, e.g., Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 64 Wash.App. 838, 827 P.2d 1024, 1034 (1992) ("Even gross negligence or willful wanton conduct may be covered, where there has been no actual intent to injure."); and *Patrons–Oxford Mut. Ins. Co. v. Dodge*, 426 A.2d 888 (Me.1981) (a finding that the policyholder recklessly discharged a shotgun and seriously injured a third party was insufficient to establish that the policyholder "expected and intended" to cause the injury).

The question in this case is whether there is coverage for the policyholder against the respondents' "intentional infliction of emotional distress" claim. Under the "expected/intended" exclusion, a policyholder may be denied coverage only if the policyholder (1) committed an intentional act *and* (2) expected or intended the specific resulting damage.

When faced with whether there is coverage for allegedly "intentional" actions, most courts do not look at whether the *act* was intentional, but focus more on whether the policyholder expected or intended the *result.* Courts look at the subjective intent of the policyholder, because the policy language specifically says to determine if the loss was "expected or intended from the standpoint of *the insured.*" Accordingly, courts should not look at a case with an "objective" standard in mind—whether the resulting injury or damage was reasonably foreseeable to a reasonable person is irrelevant. The question to ask is, "Did this policyholder expect or intend the injury or property damage?" [2]

During the drafting process of the expected/intended exclusion, insurance companies wanted the exclusion to be applied in a subjective manner, hence the choice of the language "expected or intended from the standpoint of the insured." The drafters intended to

... provide coverage for routine, intentional business operations involving activities that might give rise to unexpected damage. This intent was, and is, consistent with the purpose of insurance, which is to protect the policyholder against foreseeable, but unintended, injury resulting from the policyholder's negligence. The policyholder may have intended to run the stop sign but did not intend to rear-end the car ahead.

E. Anderson, 1 *Insurance Coverage Litigation* 398 (1997).

---

2. It appears that a majority of jurisdictions have adopted the subjective approach to the "expected/intended" exclusion. As the court stated in *Smith v. Hughes Aircraft Co.*, 783 F.Supp. 1222, 1236 (D.Ariz.1991), a subjective standard for determining the policyholder's intent "is supported by the fact that the 'neither expected nor intended' language is followed by the phrase 'from the standpoint of the insured.'" For other jurisdictions, *see Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083 (Colo.1991); *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273 (Ky.1991); *Espinet v. Horvath*, 157 Vt. 257, 597 A.2d 307 (1991); *City of Johnstown v. Bankers Standard Ins. Co.*, 877 F.2d 1146 (2d Cir.1989); *Poston v. USF & G*, 107 Wis.2d 215, 320 N.W.2d 9 (Ct.App.1982); *Farmers Ins. Group v. Sessions*, 100 Idaho 914, 607 P.2d 422 (1980); *Hanover Ins. Co. v. Newcomer*, 585 S.W.2d 285 (Mo.Ct.App.1979); *Ambassador Ins. Co. v. Montes*, 147 N.J.Super. 286, 371 A.2d 292 (1977); *Continental W. Ins. Co. v. Toal*, 309 Minn. 169, 244 N.W.2d 121 (1976); *Home Ins. Co. v. Neilsen*, 165 Ind.App. 445, 332 N.E.2d 240 (1975); *Cincinnati Ins. Co. v. Mosley*, 41 Ohio App.2d 113, 322 N.E.2d 693 (1974); *Cloud v. Shelby Mut. Ins. Co.*, 248 So.2d 217 (Fla.Ct.App. 1971). *See also,* "Coverage or exclusion of intentional injuries," 43 Am.Jur.2d § 708 (1982) ("An exclusion from coverage for injuries expected or intended does not exclude liability for unintentional or unexpected injury. The mere act of doing an intentional act by the insured does not relieve the insurer where the resultant injuries were unintended.")

I agree that, without the presence of the current "expected/intended" language in a policy, the policy language might be interpreted as creating an objective standard. However, such an interpretation would be directly contrary to what the insurance industry intended when it drafted the policy. When the "expected/intended" language was removed from an early draft of the policy exclusion, thereby creating an objective standard, the committee of policy drafters "rejected the exclusion because of concerns that an objective standard would not sell and because the exclusion would have resulted in a dramatic reduction in coverage.[.]" *Id.* at 400. We can therefore conclude that the insurance industry intended for the exclusion to be construed using a subjective standard, and conclude that the exclusion was to be construed narrowly so as to avoid "a dramatic reduction in coverage."

There is evidence indicating that when the basic commercial general liability policy was drafted, the insurance industry believed that the definition of "occurrence" in a commercial general liability policy would cover intentional actions that resulted in unintended injuries—including injuries such as the infliction of emotional distress. When the "expected/intended" exclusion was originally drafted in 1966, it was contained in the definition of "occurrence." An occurrence was defined as "an accident ... which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." [3] George Katz, a member of the Joint Drafting Committee from Aetna Insurance Company, wrote:

> An occurrence as defined *includes the infliction of intentional injury*, provided the insured (that is the person against whom the claim is made) did not intend or expect it.

G. Katz, "Why the New Liability Policy?", *Insurance Advocate*, Sept. 24, 1966 at 32 (emphasis added). *See also*, S. Rynearson, "Exclusion of Expected or Intended Personal Injury or Property Damage under the Occurrence Definition of the Standard Comprehensive General Liability Policy," 19 *Forum* 513 (June 1984).

In sum, the insurance industry believed that the commercial general liability policy would cover negligent, grossly negligent and reckless actions. The insurance industry also believed that the policy would cover the infliction of intentional injuries when, viewed subjectively, (1) the policyholder acted intentionally, but (2) did not intend the specific injury incurred by the claimant.

Using these guidelines, is there coverage for the respondents' claims of intentional infliction of emotional distress? Maybe—but the question is one of fact, best resolved by a jury. The reason the question is one of fact lies in the guidelines that a plaintiff must follow to prove "intentional infliction of emotional distress."

This Court has made clear that a defendant may be held liable for both intentionally inflicting emotional distress *and* recklessly inflicting emotional distress. We stated in Syllabus Point 6 of *Harless v. First Nat. Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982):

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

A defendant can be held liable for recklessly inflicting emotional distress "when it was certain or substantially certain emotional distress would result from his conduct." Sylla-

---

**3.** Prior to 1986, commercial general liability policies used the definition of "occurrence" contained above in the text. Substantial litigation occurred over the meaning of "occurrence," and many courts interpreted the "expected/intended" language as an affirmative defense to coverage. In other words, courts required insurance companies to prove that both the act and the result were expected and intended by the policyholders before coverage could be voided. In 1986, the standard commercial general liability policy forms were modified to make the "expected/intended" provision a specific policy exclusion. While this stylistic change made the policy more readable, it did nothing to change the insurance company's burden of proof. As this Court has often stated, the insurance company bears the burden of proving the applicability and operation of an exclusion.

bus Point 3, *Travis v. Alcon Laboratories, Inc.*, 202 W.Va. 369, 504 S.E.2d 419 (1998). A defendant may also be held liable "where he acts recklessly ... in deliberate disregard of a high degree of probability that the emotional distress will follow." 202 W.Va. at 379, 504 S.E.2d at 429, *quoting Restatement of Torts (Second)*, § 46, comment (i).

Whether a defendant has acted recklessly in inflicting emotional distress is usually a question of fact for the jury. *Id.*

In the instant case, the respondent homeowners allege only that the petitioner contractor committed the tort of "intentional infliction of emotional distress." The insurance policy covering the contractor would only exclude coverage if the contractor subjectively (1) acted with an intent to inflict severe emotional distress, and (2) caused the severe emotional distress he intended to cause. If the contractor acted recklessly in deliberate disregard of a high degree of probability that emotional distress would follow, or acted in a reckless manner such that he was certain or substantially certain that emotional distress would result from his actions, or intended to cause one kind of emotional distress and actually caused a different kind of emotional response, then the "intentional acts" exclusion would not apply.

Whatever the case may be, these questions are very fact intensive. As we said in *Travis v. Alcon Laboratories, Inc., supra*, the question of whether a defendant has intentionally or recklessly caused severe emotional distress is a question for a jury. It is a question of fact, not one of law—and therefore should not be resolved as a matter of law by a trial court or this Court on a petition for extraordinary relief.

Accordingly, I concur in the majority's decision to deny the writ of prohibition.