671 S.E.2d 802

**AMERICAN MODERN HOME INSURANCE COMPANY, Plaintiff**

v.

**Jeff CORRA, et al., Defendants.**

No. 33861.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2008.

Decided Dec. 15, 2008.

Dissenting Opinion of Justice Starcher Dec. 30, 2008.

Ancil G. Ramey, Esq., Michelle E. Piziak, Esq., Steptoe & Johnson, Charleston, for American Modern Home Insurance Company.

D. Scott Bellomy, Esq., Bellomy & Turner, Huntington, for the Estate of Joshua Tucker.

James M. Cagle, Esq., Charleston, for Jeff Corra.

Steven M. Thorne, Esq., Cook & Cook, Madison, for Morgan Brown.

Paul S. Perfater, Esq., Myers and Perfater, Charleston, for the Estate of Matthew Humphreys.

MAYNARD, Chief Justice.[1]

In this case, the Court answers the following certified question from the United States District Court for the Southern District of West Virginia:

> The homeowner's policy in effect at the time of the underlying events provides coverage for an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in ... bodily injury or property damage." Under West Virginia law, does knowingly permitting an underage adult to consume alcoholic beverages on a homeowner's property constitute an "occurrence" within the meaning of the American Modern Home Insurance Company homeowner's policy at issue in this case?

For the reasons that follow, we answer the question in the negative.[2]

## I.

### FACTS

On the evening of August 5, 2006, several underage individuals, including Morgan Brown, Joshua Tucker, Matthew Humphreys, and Courtney McDonough, attended a party at the residence of Jeff Corra at the invitation of Mr. Corra's daughter. Mr. Corra was present at the time of the party.[3] Ms. McDonough consumed a half can of beer from Mr. Corra's refrigerator. She then left the party with others to purchase additional alcohol with Mr. Tucker's false identification. Ms. McDonough then returned to Mr. Corra's residence where she consumed approximately six or seven beers.

In the early morning hours of August 6, 2006, Ms. Brown, Mr. Tucker, Mr. Humphreys, and Ms. McDonough left the party together in a vehicle driven by Ms. McDonough. They were subsequently involved in an automobile accident resulting in the deaths of Mr. Tucker and Mr. Humphreys and serious injury to Ms. Brown. Consequently, Ms. McDonough pleaded guilty to

---

**1.** Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

**2.** According to W.Va.Code § 51–1A–3 (1996), "[t]he Supreme Court of Appeals of West Virginia may answer a question of law certified to it by any court of the United States[.]" Having found the certified question determinative of an issue in the underlying cause of action and no clear controlling precedent that governs the question, we deem it proper to answer the question certified. *See Taylor v. Nationwide Mut. Ins. Co.*, 214 W.Va. 324, 589 S.E.2d 55 (2003).

Also, several of the parties herein ask this Court to reformulate the question. Because we find that the question as formulated is determinative of the issue pending in the underlying action, we decline to reformulate the question.

**3.** According to the parties, Mr. Corra was burning brush in the yard for much of the evening.

two counts of driving while under the influence of alcohol causing death and one count of driving while under the influence of alcohol causing injury. Mr. Corra was convicted of four counts of knowingly providing alcohol to underage persons,[4] one count of which related to the half can of beer Ms. McDonough had taken from Mr. Corra's refrigerator.

In September 2006, Ms. Brown and the estates of Mr. Tucker and Mr. Humphreys notified Mr. Corra that they intended to bring claims under Mr. Corra's homeowner's policy for damages arising from the automobile accident. In these claims, Ms. Brown and the estates of Mr. Tucker and Mr. Humphreys allege that on the evening of the accident, Ms. McDonough, the driver of the vehicle, who was approximately 19 years old at the time, consumed alcohol as a social guest on Mr. Corra's property.

Mr. Corra had purchased homeowner's insurance through American Modern Home Insurance Company ("American Modern") for the period of February 16, 2006, through February 16, 2007. American Modern subsequently filed an action in the United States District Court for the Southern District of West Virginia against Mr. Corra, Ms. McDonough, Ms. Brown, and the estates of Mr. Tucker and Mr. Humphreys, seeking a declaratory judgment that the injuries to Ms. Brown, Mr. Tucker and Mr. Humphreys are not covered by the homeowner's insurance policy and that American Modern has no duty to defend or indemnify Mr. Corra against these claims.[5] Thereafter, American Modern filed a motion for summary judgment arguing, *inter alia*, that the injuries to Ms. Brown, Mr. Tucker, and Mr. Humphreys were not caused by an "occurrence" under the terms and conditions of Mr. Corra's homeowner's policy. Thereafter, the court certified the above question to this Court which we now proceed to answer.

## II.

### STANDARD OF REVIEW

 This Court has held that "[a] de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court." Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W.Va. 27, 506 S.E.2d 64 (1998). Additionally, we are asked to determine the terms of an insurance policy. "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syllabus Point 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). Finally, "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." Syllabus Point 2, *Riffe v. Home Finders Associates, Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999). With this standard to guide us, we now turn to the issue before us.

## III.

### DISCUSSION

The sole issue herein is whether knowingly permitting an underage adult to consume

---

4. Mr. Corra filed a petition for appeal of his criminal convictions with this Court, and this Court granted the petition. The appeal is scheduled to be heard during the Court's January 2009, term. Mr. Corra's conviction is not relevant to our decision in the instant case.

5. In Syllabus Point 2 of *Overbaugh v. McCutcheon*, 183 W.Va. 386, 396 S.E.2d 153 (1990), this Court held:

> Absent a basis in either common law principles of negligence or statutory enactment, there is generally no liability on the part of the social host who gratuitously furnishes alcohol to a guest when an injury to an innocent third party occurs as a result of the guest's intoxication.

American Modern Home Insurance Company argues in its brief that under *Overbaugh*, Mr. Corra can only be found liable for the injuries incurred in the automobile accident based on the fact that he was found guilty of violating a criminal statute. According to American Modern, because a violation of the criminal act required a finding of intentional or deliberate conduct by Mr. Corra, one must conclude that Mr. Corra's conduct cannot be considered an "occurrence" under his homeowner's policy. Mr. Corra responds that he was wrongfully convicted, and that this Court has agreed to hear his criminal appeal. This Court does not find it necessary to address these specific arguments in deciding the narrow issue before us.

alcoholic beverages on a homeowner's property constitutes an "occurrence" within the meaning of Mr. Corra's American Modern Home Insurance Company's homeowner's policy. The relevant policy language for the "personal liability" coverage of Mr. Corra's policy states:

> If a claim is made or a suit is brought against any **insured person** for damages because of **bodily injury or property damage**, caused by an **occurrence**, to which this coverage applies, we will . . .
>
> **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period in:
>
> a. **bodily injury;** or
> b. **property damage.**

This Court previously has considered "accident" language in insurance policies similar to the language in the instant case. In *West Virginia Fire & Cas. Co. v. Stanley,* 216 W.Va. 40, 49, 602 S.E.2d 483 (2004), we were asked to determine whether the alleged sexual misconduct of an insured was covered by the "accident" requirement in the subject homeowner's policy. The liability provision of the policy stated:

> We will pay any amount up to your Limit of Coverage for which a **Covered Person** becomes legally liable as a result of **bodily injury** or **property damage** that is caused by an accident. Continuous or repeated exposure to the same conditions is considered a single accident. We will not cover **bodily injury** or **property damage** that is expected or intended by a **Covered Person.**

216 W.Va. at 44, 602 S.E.2d at 487. Pursuant to deciding the issue in *Stanley,* we discussed at length the meaning of the term "accident" as follows:

> This Court considered very similar "accident" language in *Dotts v. Taressa J.A.,* 182 W.Va. 586, 390 S.E.2d 568 (1990). The business and auto liability insurance portion of the policy at issue in that case obligated the insurance company to "pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance ap-

plies, caused by an *accident* and resulting from the ownership, maintenance or use of a covered auto." 182 W.Va. at 587, 390 S.E.2d at 569. We noted that "[t]he term 'accident' is defined in the policy as follows: 'Accident includes continuous or repeated exposure to the same conditions resulting in bodily injury or property damage the *insured neither expected or intended.'"* *Id.* The Court then explained:

> There is a rather lengthy annotation at 31 A.L.R.4th 957 (1984), collecting cases that deal with policy language excluding coverage for injuries intended or expected by the insured. The annotator points out that this language attempted to clarify and replace the intentional injury exclusion by limiting the term "accident" for coverage purposes to those actions of the insured that were neither expected nor intended. This language was also designed to focus the evaluation of the event on the perspective of the insured rather than on that of the injured victim. Annot., 31 A.L.R.4th at 972. *See Patrons–Oxford Mut. Ins. Co. v. Dodge,* 426 A.2d 888, 891 (Me.1981).

> \* \* \* \* \* \*

182 W.Va. at 588–89, 390 S.E.2d at 570–71 (footnote omitted).

More recently, we addressed the meaning of the term "accident" in an insurance policy in *State Bancorp, Inc. v. U.S. Fidelity and Guar.,* 199 W.Va. 99, 483 S.E.2d 228 (1997). In that case, the insureds' policies obligated the insurers to pay damages because of "bodily injury" or "property damage" which was caused by an "occurrence" during the policy period. 199 W.Va. at 103, 483 S.E.2d at 232. An "occurrence" was defined as "as an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The question before the Court was whether the allegations in the subject complaint were reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy. The complaint alleged the tort of outrage, breach of contract, the tort

of civil conspiracy, and violation of state banking laws.

Even though the word "accident" was not defined in the policies, we noted that,

> Ordinarily, "accident" is defined as "an event occurring by chance or arising from unknown causes[.]" *Webster's New Collegiate Dictionary* 7 (1981). As one court has explained,

> > [a]n 'accident' generally means an unusual. unexpected and unforeseen event.... An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage.... To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.

> *Harrison Plumbing & Heating, Inc. v. New Hampshire Insurance Group*, 37 Wash.App. 621, 681 P.2d 875, 878 (1984) (citations omitted). *See also Travelers Ins. Companies v. P.C. Quote, Inc.*, 211 Ill.App.3d 719, 156 Ill.Dec. 138, 143, 570 N.E.2d 614, 619 (1991) ("An accident is defined as 'an unforeseen occurrence of untoward or disastrous character' or 'an undesigned sudden or unexpected event.' " (citation omitted)); *Arco Industries Corp. v. American Motorists Ins. Co.*, 448 Mich. 395, 531 N.W.2d 168, 173 (1995).

199 W.Va. at 105, 483 S.E.2d at 234. After applying this definition of "accident" to the allegations in the complaint, we concluded that "a breach of contract which causes 'bodily injury' or 'property damage' is not an event that occurs by chance or arises from unknown causes, and, therefore, is not an 'occurrence[.]" *Id.*

We do not believe that the term "accident" in the instant policy is ambiguous. The common and every day meaning of "accident" is a chance event or event arising from unknown causes.

*Stanley*, 216 W.Va. at 48–49, 602 S.E.2d at 491–492.[6]

■ Finally, in *Columbia Cas. Co. v. Westfield Ins. Co.*, 217 W.Va. 250, 617 S.E.2d 797 (2005), this Court addressed a certified question asking whether two Randolph County jail inmate suicides were "occurrences" under a liability insurance policy issued to the Randolph County Commission. The definition of "occurrence" in the subject policy was essentially identical to the definition in the instant case. This Court held in the sole Syllabus Point that,

> In determining whether under a liability insurance policy an occurrence was or was not an "accident"—or was or was not deliberate, intentional, expected, desired, or foreseen—primary consideration, relevance, and weight should ordinarily be given to the perspective or standpoint of the insured whose coverage under the policy is at issue.

Upon application of this rule to the facts in *Columbia Cas. Co.*, we determined that from the perspective of the insured Randolph County Commission, the inmates' deaths by suicide were not deliberate, intentional, expected, desired, or foreseen by the Commission. Thus, we concluded that the deaths were "accidents" and therefore "occurrences" under the policy language in question.

■ In the instant case, we believe that it is obvious that where a homeowner engages in conduct knowingly, that conduct clearly cannot be said to be unexpected and unforeseen from the perspective of the homeowner. In other words, conduct engaged in knowingly is not an "accident" and thus not an "occurrence" under Mr. Corra's homeowner's policy. Accordingly, we now hold that absent policy language to the contrary, a homeowner's insurance policy defining "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which re-

---

**6.** The defendants seek to distinguish *Stanley* and several cases cited in *Stanley* on the basis that these cases involved intentional torts. Despite the fact that the defendants have not alleged that Mr. Corra committed an intentional tort, we believe that our discussion in these cases concern-

ing the meaning of the terms "occurrence" and "accident" to include events that are unexpected or unforeseen is relevant to determining whether Mr. Corra's knowing conduct constituted an "occurrence" under the policy below.

sults, during the policy period in ... bodily injury or property damage," does not provide coverage where the injury or damage is allegedly caused by the homeowner's conduct in knowingly permitting an underage adult to consume alcoholic beverages on the homeowner's property.

The defendants in the declaratory judgment action below present a number of arguments in their briefs as to why this Court should answer the certified question in the positive, none of which we find compelling. Mr. Corra, the homeowner spends much time in his brief arguing that he was wrongly convicted of furnishing alcoholic beverages to minors. However, this Court finds Mr. Corra's criminal conviction to be immaterial to the certified question which does not concern *knowingly furnishing* alcohol to underage individuals but rather *knowingly permitting* underage individuals to consume alcohol on Mr. Corra's property. Second, Mr. Corra asserts that under our law an "occurrence" under a homeowner's policy exists unless the policyholder commits an intentional act and expected or intended the resulting damage. We do not find this to be an accurate characterization of our law. As seen from our discussion above, an "occurrence," in addition to excluding intentional conduct, also excludes conduct that is foreseen and expected. Again, knowing conduct is certainly foreseen or expected, and thus cannot be considered an "occurrence." Finally, Mr. Corra avers that our ability to answer the certified question is hampered in that questions of material fact remain concerning the application of existing precedent. To the contrary, we find nothing in the facts as presented to us by the district court or by the parties that impedes our ability to answer the certified question.

The defendants Morgan Brown, and the estates of Humphreys, and Tucker, all argue that the real issue presented in this case is whether a homeowner's policy should cover a homeowner who negligently permitted the use of his property for the consumption of alcohol by underage adults which proximately caused a motor vehicle accident that occurred off the premises causing injury. We disagree. Simply by framing their claims as arising in negligence, the defendants cannot prevent the operation of "occurrence" language in a homeowner's policy where it is shown that the homeowner knowingly permitted underage adults to consume alcoholic beverages on his property.

Finally, the estates of Humphreys and Tucker contend that the triggering event or occurrence under Mr. Corra's homeowner's policy was the automobile accident which, they allege, was an unforeseen happening. Again, we disagree. Generally, in determining the existence of an "occurrence" which gives rise to coverage under a homeowner's policy, the essential inquiry is on either the condition of the insured premises or the *activity of the insured*.[7] Because the automobile accident occurred off of Mr. Corra's property, the issue is whether Mr. Corra's activity gives rise to the coverage. For this reason, we believe that the district court certified the proper question.[8]

## IV.

### CONCLUSION

For the foregoing reasons, we answer the certified question as follows:

The homeowner's policy in effect at the time of the underlying events provides coverage for an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which re-

---

7. For example, the subject policy indicates that coverage for medical payments to others applies only:
 a. to a person on the insured premises with the permission of any insured person; or
 b. to a person off the insured premises, if the bodily injury:
 (1) arises out of a condition on the insured premises;
 (2) is caused by the activities of any insured person;
 (3) is caused by a resident employee in the course of the residence [sic] employees employment by an insured person; or
 (4) is caused by an animal owned by or in the care of any insured person.

8. However, even assuming *arguendo* that the triggering "occurrence" under the policy is the automobile accident, under the facts of this case, it cannot be said that the automobile accident was unforeseen or unexpected.

sults, during the policy period in ... bodily injury or property damage." Under West Virginia law, does knowingly permitting an underage adult to consume alcoholic beverages on a homeowner's property constitute an "occurrence" within the meaning of the American Modern Home Insurance Company homeowner's policy at issue in this case?

Answer: No.[9]

Certified question answered.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

Justice ALBRIGHT not participating.

Senior Status Justice MCHUGH sitting by temporary assignment.

STARCHER, J., dissenting.

(Filed Dec. 30, 2008)

I dissent because the majority opinion has injected its own standards of morality into the interpretation of an insurance contract. The majority opinion decides that because the policyholder did something reprehensible—allowed alcohol to be served to minors in his house—then we should have little sympathy for the policyholder.

But the simple fact is that the "occurrence" policy language like that in the instant case has only one crystal clear meaning: a policyholder may be denied coverage only if the policyholder (1) committed an intentional act *and* (2) expected or intended the specific resulting damage. And that simply didn't happen in this case.

In the instant case, the question to ask is whether the automobile accident at issue in this case was deliberate or intentional from Jeff Corra's perspective. Obviously, it was not, and there should therefore be coverage in the instant case. As leading authorities have repeatedly stated, language like that in the policy at issue

... does not exclude liability for unintentional or unexpected injury. The mere act

of doing an intentional act by the insured does not relieve the insurer where the resultant injuries were unintended.

"Coverage or exclusion of intentional injuries," 43 Am.Jur.2d § 708 (1982). *See also, Tackett v. American Motorists Ins. Co.,* 213 W.Va. 524, 535, 584 S.E.2d 158, 169 (2003) (Starcher, C.J., concurring, in part, and dissenting, in part). Stated in a different way:

When faced with whether there is coverage for allegedly "intentional" actions, most courts do not look at whether the *act* was intentional, but focus more on whether the policyholder expected or intended the *result.* Courts look at the subjective intent of the policyholder, because the policy language specifically says to determine if the loss was "expected or intended from the standpoint of *the insured.*" Accordingly, courts should not look at a case with an "objective" standard in mind—whether the resulting injury or damage was reasonably foreseeable to a reasonable person is irrelevant. The question to ask is, "Did this policyholder expect or intend the injury or property damage?"

*State ex rel. Davidson v. Hoke,* 207 W.Va. 332, 339, 532 S.E.2d 50, 57 (2000) (*per curiam*) (Starcher, J., concurring). This interpretation of the word "occurrence" in a homeowner's insurance policy is

... consistent with the purpose of insurance, which is to protect the policyholder against foreseeable, but unintended, injury resulting from the policyholder's negligence. The policyholder may have intended to run the stop sign but did not intend to rearend the car ahead.

E. Anderson, 1 *Insurance Coverage Litigation* 398 (1997).

In this case, I question whether the facts even support a holding that Mr. Corra intentionally served alcohol to the minors in his house; more likely, Mr. Corra turned a blind eye to the stupidity of his children and their friends in allowing them to rummage through

---

9. Notwithstanding the decision in this case, the author of this opinion, in contrast to the majority of the Court, believes that there are factual issues not yet developed in the trial court which could possibly have an impact on the ultimate issue of

the insurer's duty to defend and indemnify in this case. Therefore, although a majority of the Court does not presently share this view, the author believes that the insurer should be required to provide a defense to Mr. Corra.

the refrigerator and liquor cabinet, and allow their friends to bring booze into the house. With such horrible facts, Mr. Corra did the right thing when he entered a guilty plea to four counts of "knowingly" providing alcohol to minors. Still, "knowingly" allowing teenagers to drink is not the same thing as intentionally getting them drunk and shooing them out the door—and I see nothing in the record to even suggest that Mr. Corra intended the result of his "knowing" actions, that is, nothing showing he expected or intended for those teenagers to be involved in a collision that resulted in the death of two teenagers and the serious injury of a third.

Bad facts make bad law, and the majority opinion's disdain for underage drinking (which I personally share) has resulted in a bad opinion. Mr. Corra bought and paid for homeowner's liability insurance to protect himself, and to protect others, when his carelessness causes injury to those others. He was certainly careless, and the victims of his carelessness should not suffer more by being denied any compensation. Mr. Corra did not intentionally serve alcohol to his children's friends intending for them to drive off the side of the road to get maimed and killed. Under well established law, the insurance policy should have been interpreted as providing coverage in this case.

I therefore respectfully dissent.